**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT AKRON, OHIO**

| | | |
|---|---|---|
| **TERRENCE JACKSON** | : | **CASE NO:** |
| **263 S. MAIN STREET, SUITE 1501** | : | |
| **AKRON, OHIO  44308** | : | **JUDGE:** |
| | : | |
| **PLAINTIFF** | : | |
| | : | |
| **VS.** | : | |
| | : | |
| **SPEEDWAY LLC** | : | **COMPLAINT FOR DAMAGES AND** |
| **C/O CT CORPORATION SYSTEM** | : | **DECLARATORY JUDGMENT, AND** |
| **4400 EASTON COMMONS WAY** | : | **PERMANENT RELIEF** |
| **SUITE 125** | : | |
| **COLUMBUS, OHIO  43219** | : | **JURY DEMAND ENDORSED HEREIN** |
| | : | |
| **DEFENDANT** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **SHATOYNA WILSON** | : | |
| **SUED IN HER INDIVIDUAL &** | : | |
| **OFFICIAL CAPACITIES** | : | |
| **1172 YUKON AVENUE** | : | |
| **AKRON, OHIO  44320** | : | |
| | : | |
| **ALSO:** | : | |
| **C/O CT CORPORATION SYSTEM** | : | |
| **4400 EASTON COMMONS WAY** | : | |
| **SUITE 125** | : | |
| **COLUMBUS, OHIO  43219** | : | |
| | : | |
| **DEFENDANT** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **MICHELLE NOLAN** | : | |
| **SUED IN HER INDIVIDUAL &** | : | |
| **OFFICIAL CAPACITIES** | : | |
| **786 BARBARA AVENUE** | : | |
| **AKRON, OHIO  44306** | : | |
| | : | |

1

| | |
|---|---|
| **ALSO:** | **:** |
| **C/O CT CORPORATION SYSTEM** | **:** |
| **4400 EASTON COMMONS WAY** | **:** |
| **SUITE 125** | **:** |
| **COLUMBUS, OHIO  43219** | **:** |
| | **:** |
| **DEFENDANT** | **:** |
| | **:** |
| **AND** | **:** |
| | **:** |
| **JANE/JOHN DOES #3, 4, 5, 6, 7, 8, 9, 10** | **:** |
| **SUED IN THEIR INDIVIDUAL &** | **:** |
| **OFFICIAL CAPACITIES** | **:** |
| **C/O CT CORPORATION SYSTEM** | **:** |
| **4400 EASTON COMMONS WAY** | **:** |
| **SUITE 125** | **:** |
| **COLUMBUS, OHIO  43219** | **:** |
| | **:** |
| **DEFENDANTS** | **:** |

## I.    PRELIMINARY STATEMENT

1.    This public accommodation civil rights case challenges Speedway's refusal to serve Terrence Jackson, a 41-year-old black male with brown colored skin, on April 15, 2017. Mr. Jackson, a peaceful Akron resident wanted to purchase a couple cans of beer and was debating on a hot sub on his way home after an evening at the University of Akron Library.  Mr. Jackson was dressed in a brown t-shirt, black sweatpants, and was wearing his bag, a backpack, when he entered Speedway Store 3634.  The store clerks, Customer Service Representatives Shatoyna Wilson and Michelle Nolan[1], refused to serve Mr. Jackson for the unlawful pretextual reason that he was carrying a bag.  When Mr. Jackson asked why he was being treated differently than the female customers receiving service while wearing bags, purses, CSR Nolan called the police, reporting Mr. Jackson as a belligerent customer who refused to leave the store.  Speedway's sign policy banning **ALL BAGS** reads:

PLEASE
LEAVE
**ALL BAGS**
AT THE DOOR
THANK YOU FOR YOUR CO-OPERATION

---

[1] Hereafter referenced as CSR Wilson and CSR Nolan

Speedway uses security surveillance cameras and off-duty police officers.  The surveillance video depicts Mr. Jackson behaving peacefully when he shopped, when he presented at the check-out counter for service, and when he was denied service by both CSR Wilson and CSR Nolan.  CSR Wilson and CSR Nolan stated they do not consider "purses" to be banned by the policy banning **ALL BAGS**.  Speedway describes its policy differently, stating:  "Due to significant theft-related losses and security issues at Store 3634 in Akron, OH, the store implemented a policy whereby customers were required to leave book bags at a designated area near the front entrance upon entering the store."  The policy does not state "book bags," it states **ALL BAGS**. The surveillance video depicts Defendants serving adult white and black female customers wearing bags known as purses.  Akron Police Report #16-020141 states Defendants served an adult white male wearing a bag known as a purse.  Akron Police Reports #16-016355, #16-018628 and #17-019808 illustrate Defendants knowledge that a white adult female used her "purse" to steal Store merchandise; a white adult male used his "book bag" to steal Store merchandise; and an adult white male used his "bag" to steal Store merchandise.  Defendants' proffered legitimate non-discriminate business justifications are illegal pretext.  A ban on **ALL BAGS** means just that:  purses, book bags, backpacks, bags, diaper bags, not just "book bags" the day Mr. Jackson attempts to receive service while wearing a backpack.  Mr. Jackson brings this civil rights and state law action to secure fair compensation, a declaration of Speedway's discriminatory enforcement of its policy banning **ALL BAGS** to protected class member Mr. Jackson, an order enjoining future discriminatory practices, and to encourage Defendants and others to refrain from discriminatorily enforcing policies against black men and men of color.  Defendants engaged in retail consumer profiling because Mr. Jackson was "shopping while black."

2.  This action is brought pursuant to 42 U.S.C. § 2000a, 42 U.S.C. § 1981, 42 U.S.C. § 1982, Ohio's anti-discrimination laws contained in Ohio R.C. Chapter 4112, *et. seq.*, and Ohio common law.

3.  Mr. Jackson seeks an award of compensatory damages for his non-economic damages, actual damages, nominal damages, punitive damages, injunctive relief, declaratory relief, equitable relief, and an award of his reasonable attorney fees and costs.

## II.    JURISDICTION AND VENUE

4.  This Court has jurisdiction over Mr. Jackson's federal claims pursuant to 28 U.S.C. § 1331.  This Court may assume supplemental jurisdiction over Jackson's claims under Ohio law pursuant to 28 U.S.C. § 1367 because those claims derive from the same nucleus of operative facts as his federal claims.

5.  Venue properly lies in this forum pursuant to 28 U.S.C. §1391(b)(1)-(2) as the acts and omissions or failures to act took place, at least in part, at Speedway Store #3634 located at 293 E. Market Street, Akron, Ohio.  Venue also properly lies in this forum as Speedway does substantial business in Ohio and employed CSR Wilson and CSR Nolan in this forum.

6.     While Mr. Jackson denies such obligation, any alleged obligation to exhaust administrative remedies has been fulfilled.  Mr. Jackson timely filed a charge of public accommodation, race discrimination and gender discrimination arising out of the facts and circumstances herein on October 13, 2017, EEOC 22A-2018-00135F, OCRC AKRG3(39231)10122017.   The notification letter denying the charge for lack of probable cause was mailed April 26, 2018.

## III.    PARTIES

7.     Plaintiff Mr. Terrence Jackson is an adult African American male who is a resident of the Akron, Summit County, Ohio community, and brings this action on his own behalf.

8.     Defendant Speedway, LLC ("Speedway") operates 24/7 fueling and convenience stores.  At all times relevant to this action, Speedway operated and continues to operate a fueling and convenience store, Store 3634, located at 293 E. Market Street, Akron, Ohio.  At all times relevant to this action, Speedway Store 3634 was and is open to the public for service.

9.     Speedway's statutory agent is CT Corporation System.

10.    Speedway's principal place of business is located at 500 Speedway Drive, Enon, Clark County, Ohio.

11.    Speedway does business throughout the State of Ohio and in other states.

12.    Speedway employed CSR Wilson to wait on Speedway customers and carry out store operations at all times relevant to this action.  CSR Wilson is believed to be an adult African American female.  CSR Wilson is sued individually and in her official capacity as an employee of Speedway for the actions/inactions she took in the scope and course of her employment.

13.     Speedway employed CSR Nolan to wait on Speedway customers and carry out store operations at all times relevant to this action.  CSR Nolan is believed to be an adult Caucasian female.  CSR Nolan is sued individually and in her official capacity as an employee of Speedway for the actions/inactions she took in the scope and course of her employment.

14.    Speedway employed Jane/John Does 3 through 10, at all times relevant to this action, to provide creation of store policy and procedure, training on store policy and procedure, supervision, and management to operate Speedway Store 3634 and other stores. Jane/John Does 3 through 10 are sued individually and in their official capacities as employees of Speedway for the actions/inactions they took in the scope and course of their employment.   The benefit of Federal Civil Procedure Rule 26 disclosures and discovery is needed in order to identify Jane/John Does 3 through 10, all of whom are readily known and can be identified by Speedway.

## IV.    BACKGROUND AND ALLEGATIONS

15.    Mr. Jackson, a bachelor with no children, on or about Saturday April 15, 2017, entered Speedway Store 3634, on E. Market Street on his way home following an evening at the University of Akron library.  While not enrolled in classes at that time, he was a few credits shy of earning an associate degree in criminal justice.  Mr. Jackson suffers from depression and the event giving rise to this lawsuit caused him additional psychological harm.  For employment, Mr. Jackson then worked and continues to work temporary jobs in the industrial/warehouse industry as he is able.

16.    Mr. Jackson travelled on foot that evening and carried his laptop which he was using at the library in his bag.  The type of bag Mr. Jackson wore is described as a backpack.  His laptop is one of the most expensive possessions he owns, and he is very careful with it.

17.    Mr. Jackson decided to enter Speedway to grab a few beers and possibly a sub sandwich to eat before heading home.

18.    The Speedway Store is monitored by video surveillance and the following events, as noted by video tame-stamps, occurred at the Speedway Store and are captured on the video.  A true and accurate copy of Speedway's video surveillance recording is being filed manually as Plaintiff's Exhibit 1.

19.    At approximately 7:43:36 p.m. Mr. Jackson, dressed in a brown t-shirt and black sweatpants, backpack hanging from both shoulders, clean shaven with a bald head enters the Speedway Store.  (See Exhibit 1: Camera 6 Sales Floor @ 7:43:36)

20.    Mr. Jackson selected three cans of beer, having decided not to purchase a sub sandwich, and headed towards the register to check-out wearing his bag.  (See Exhibit 1: Camera 5 Fronter Counter @ 7:46:50-7:47:34)

21.    Mr. Jackson wore his bag while he shopped peacefully, selecting his items for purchase.  (See Exhibit 1: Camera 5 Fronter Counter @ 7:46-50-7:47:34)

22.    When done shopping, Mr. Jackson set three cans of beer on one of the check-out counters.  This check-out counter was being serviced by CSR Wilson.  (See Exhibit 1: Camera 4 Primary POS C @ 7:47:35)

23.    Mr. Jackson expected to be permitted to pay for his three items and be on his way.

24.    The glass partition at the check-out counter was open when Mr. Jackson approached, and CSR Wilson chose to keep it open while having contact with Mr. Jackson.  (See Exhibit 1: Camera 4 Primary POS C @7:47:35)

25.  CSR Wilson refused to allow Mr. Jackson to purchase the three cans of beer, denying him service. (See Exhibit 1: Camera 4 Primary POS C @ 7:47:35-7:48:34)

26.  After refusing Mr. Jackson service, CSR Wilson leaves a secure booth, with the glass window still open giving Mr. Jackson open access to the cash register and all other items within the booth.  CSR Wilson then completely turns her back to Mr. Jackson, who is still standing at the check-out counter, and walks towards the front entrance of the Store. (See Exhibit 1: Camera 4 Primary POS C @7:48:08 and Camera 5 Fronter Counter @7:48:11)

27.  CSR Wilson points to a 8.5 x 11 inch sign posted to the right side of the front door which reads:

PLEASE
LEAVE
**ALL BAGS**
AT THE DOOR
<small>THANK YOU FOR YOUR CO-OPERATION</small>

28.  A true and accurate photograph of the sign taken from outside the store is attached as Plaintiff's Exhibit 2.

29.  The ban on **ALL BAGS** policy, upon information and belief, has been in effect from at least fall 2015 to the present.

30.  Mr. Jackson had been in this Store before April 15, 2017 and had observed women being served who wore bags.  Therefore, Mr. Jackson asked CSR Wilson and CSR Nolan to explain why the Speedway Store served woman who carried bags, but the same Speedway Store was denying him service because he is carrying a bag.

31.  Speedway and Defendants created, trained on and supervised the enforcement of the policy banning **ALL BAGS** because Defendants knew shoplifters used a variety of different bags to hide items when shoplifting.

32.  Before and after April 15, 2017, Defendants intentionally and selectively applied the policy banning **ALL BAGS** to serve white and black women and to serve white men wearing bags.

33.  CSR Wilson and CSR Nolan refused Mr. Jackson service, who was wearing a bag on the illegal pretext that they were acting in compliance with Speedway's policy banning "**ALL BAGS**," in violation of his rights under federal and state law.

34.  On April 15, 2017 CSR Wilson and CSR Nolan both told Mr. Jackson "purses are not bags" in response to his inquiry for a non-discriminatory reason as to why women with

purses were not ordered to drop their bags at the front store before shopping and before receiving service when he was ordered to do both and then denied service.

35.   CSR Wilson returned to the check-out counter upon which Mr. Jackson's three selected beers sat and then she moves to a different check-out counter.  (See Exhibit 1: Camera 4 Primary POS C @7:48:31).  Mr. Jackson picks up the cans of beer, puts one back deciding to spend less as he thought he may purchase food at some point, and moves them to the new check-out counter CSR Wilson is operating. (See Exhibit 1: Camera 5 Fronter Counter and Camera 2 Primary POS B @ 7:48:45).  CSR Wilson immediately moves the cans of beer out of Mr. Jackson's reach to the left of her work area. (See Exhibit 1: Camera 2 Primary POS B @ 7:49:27). CSR Wilson continues to refuse Mr. Jackson service and successfully waits on other customers.

36.   According to the Akron Police Department CAD Incident record CSR Nolan placed a 911 call in reference to the Speedway Store at 7:52:12 PM reporting "customer refuses to leave" and describes the subject, Mr. Jackson, as a black 40 year old male wearing a brown T-shirt, black pants, clean shaven and bald head.

37.   The emergency 911 report made by Speedway was documented by the dispatcher as follows, "Said that he was being belligerent and they were refusing to serve [him] and he would not leave."  Before placing the call, she threatened Mr. Jackson with the call to police, which he welcomed because he knew he had done nothing wrong and so that the discriminatory event he was experiencing would be documented.  CSR Nolan then told Mr. Jackson the surveillance video would also document the event, which Mr. Jackson replied he also welcomed because it would show he had done nothing wrong and that he was being discriminated against.

38.   Speedway's emergency 911 call did not report Mr. Jackson to be in violation of Speedway's ban on **ALL BAGS** policy.

39.   After the 911 call was made, CSR Wilson began to point towards the door more than once telling Mr. Jackson he must comply with ban on **ALL BAGS** policy.  (See Exhibit 1: Camera 2 Primary POS B @ 7:53:10 and 7:54:10)

40.   In the meantime, as there is no reason to perceive Mr. Jackson as a safety threat or theft risk, CSR Nolan appears on Speedway surveillance video with a cigarette in her mouth while putting on her Speedway safety vest to mop the floor.  (See Exhibit 1: Camera 5 Fronter Counter @ 7:54:22)

41.   CSR Wilson closes the glass partition to the check-out counter she is standing behind and heads out to mill about store where Mr. Jackson is situated.   (See Exhibit 1: Camera 2 Primary POS B and Camera 4 Primary POS C @7:54:54-7:55:41)

42.  Then CSR Nolan, who appears to be smoking again in her Speedway safety vest, exits the front door which is near the fuel pumps.  (See Exhibit 1: Camera 6 Sales Floor @ 7:55:51)

43.  CSR Wilson, after milling about the Store floor for about 90 seconds re-enters the check-out booth and waits on another customer.  (See Exhibit 1: Camera 4 Primary POS C @ 7:56:36)

44.  At 7:58:36 Mr. Jackson walks to the front Store door, looks outside to see if the police officer has arrived yet, and then returns inside the store. (See Exhibit 1: Camera 6 Sales Floor @ 7:58:36)

45.  Next CSR Nolan re-enters the Store and takes her position in the check-out booth.  Mr. Jackson approaches her to learn if she will allow him to purchase the cans of beer that were placed by CSR Wilson in the check-out booth.  CSR Nolan refused Mr. Jackson service because he is carrying a bag.  (See Exhibit 1: Camera 6 Sales Floor, Camera 5 Fronter Counter, and Camera 4 Primary POS C @ 7:59:13-8:00:03)

46.  At 8:01:26, in one last good faith effort to obtain service, despite the fact it is clear Mr. Jackson poses no criminal or safety threat of any kind whatsoever, Mr. Jackson places his bag on a product display unit approximately sixteen feet from the check-out booth. He first approaches the check-out counter of CSR Nolan, to purchase the cans of beer behind the counter and she still refuses him service.  Then he approaches the check-out counter of CSR Wilson to purchase the cans of beer behind the counter and she still refuses him service.  Mr. Jackson retrieves his bag, puts it back on, and walks out of the store.  He popped his head in the door to see if the police had arrived yet, a few seconds later and seeing none, Mr. Jackson entered the BP across the street wearing his backpack, made his purchases without incident, and then continued to wait outside Speedway for the Akron police to arrive to document the discrimination he experienced. (See Exhibit 1: Camera 5 Fronter Counter, Camera 4 Primary POS C, and Camera 6 Sales Floor @ 8:01:26 -8:02:44)

47.  Akron Police Officer Stewart walked into the Store at 8:06:42 and spoke briefly with CSR Wilson for five seconds and then leaves the Store.  (See Exhibit 1: Camera 6 Sales Floor, Camera 5 Fronter Counter, and Camera 2 Primary POS B @8:06:42 – 8:07:41)

48.  Officer Stewart spoke with Mr. Jackson for approximately twenty minutes, during which time Mr. Jackson explained that he was refused service not because of his backpack but because he is a male and he is a black male.  Officer Stewart did not cite Mr. Jackson for any offense as he had done nothing illegal and cleared the scene at 8:26:06, noting "Terrance [sic] Jackson (B/M/41) said the policy of persons (primarily males) leaving backpacks at door is discrimination, because they don't apply same policy to females."  (See Exhibit 3: Akron Police Department CAD Incident Report)

49.  Speedway's surveillance video reveals Defendants are writing policy with the intent to illegally enforce it; training on policy to illegally enforce it; supervising employees to ensure the policy banning **ALL BAGS** is intentionally and selectively enforced to discriminate against Mr. Jackson.  As a direct and proximate result, Defendants engaged in illegal discriminatory consumer profiling based upon race, color of skin and sex as its justification to intentionally and selectively deny Mr. Jackson service based upon his sex as a black male, based upon his color as a black male, and based upon his race.

50.  Before Mr. Jackson was illegally denied service by both CSR Wilson and CSR Nolan, a person appearing to be an adult Caucasian female wearing a bag in the form of a large purse on one of her shoulders had been provided service (before start of video surveillance) as she is seen exiting the Store with a beverage in hand.  (See Exhibit 1: Camera 6 Sales Floor @ 7:31:48)

51.  While Mr. Jackson was illegally being denied service, a person appearing to be an adult Caucasian female wearing a bag in the form of a small purse on one of her shoulders enters the Store, has discussion with CSR Wilson in the presence of Mr. Jackson, and is not asked to leave the store.  This female does not appear to attempt to make a purchase.  (See Exhibit 1: Camera 6 Sales Floor and Camera 5 Fronter Counter @ 7:52:33 – 7:53:25)

52.  While Mr. Jackson was illegally being denied service, a person appearing to be an adult Caucasian female carrying a bag in the form of a wallet purse is not asked to leave the Store and is provided service by CSR Nolan. (See Exhibit 1: Camera 4 Primary POS C @ 8:04:21)

53.  After Mr. Jackson was illegally denied service and left the Store, three people appearing to be Caucasian females enter the Store, at least one is carrying a bag in the form of a purse on one of her shoulders, and none of the females are asked to leave. (See Exhibit 1: Camera 6 Sales Floor @ 8:28:06 – 8:28:09)  Because the surveillance video ends it is unknown if the women receive service.

54.  After Mr. Jackson was illegally denied service and left the Store, a person appearing to be an adult African American female wearing a very large bag in the form of a purse on one of her shoulders enters the Speedway Store at 8:25:31.  (See Exhibit 1: Camera 6 Sales Floor @ 8:25:31) Unlike Mr. Jackson, this adult black female is never instructed to drop the bag at the front door, is never denied service, and is never asked to leave the store because she is wearing a large purse.  This black female customer is seen at the window with CSR Wilson digging through her large purse. (See Exhibit 1: Camera 4 Primary POS C @ 8:27:10)  In stark contrast to the treatment dealt Mr. Jackson, the black adult female customer receives help from CSR Wilson at a computer terminal.  CSR Wilson appears happy to help the adult black female customer wearing the large purse on one of her shoulders as Speedway's video surveillance depicts CSR Wilson smiling while helping the female purse wearing customer.  (See Exhibit 1: Camera 5 Fronter Counter @ 8:28:30). The video surveillance recording ends as CSR Wilson

9

provides service to the adult black female customer carrying the large purse at the check-out counter at 8:29:59. (See Exhibit 1: Camera 2 Primary POS B @ 8:29:59)

55.  In the *pro se* administrative proceeding before the Ohio Civil Rights Commission and Equal Employment Opportunity Commission, Speedway rewrote its policy banning **ALL BAGS** to only ban "book bags."  Speedway stated:  "Due to significant theft-related losses and security issues at Store 3634 in Akron, OH, the store implemented a policy whereby customers were required to leave book bags at a designated area near the front entrance upon entering the store."  Speedway's explanation of what its policy "really means" is nothing more than a sham offered in an attempt to cover up illegal discrimination.  The video surveillance and Speedway's reports made to police expose that Speedway and its Defendants serve white women, black women, and white men who carry bags despite its policy banning **ALL BAGS**.  Because Mr. Jackson, on the spot, called out the discrimination, he was labeled "belligerent" and Speedway attempted to have him arrested by calling the police.  The African American officer who interviewed Mr. Jackson took no law enforcement action and documented Mr. Jackson's legitimate concerns.

56.  The Speedway policy banning **ALL BAGS**, on its face, prohibits **ALL BAGS** from the Store.

57.  Defendants know many types of bags exist, including purses, book bags, backpacks, diaper bags, briefcases, tote bags, satchels, to name a few.

58.  Speedway trains and supervises its employees to enforce, contrary to the plain meaning of policy, that **ALL BAGS** can be intentionally and selectively applied to serve consumers wearing bags and to not serve consumers wearing bags based upon discriminatory retail consumer profiling.  All Defendants acted in compliance and in furtherance of this training and supervision to discriminatorily enforce Speedway's purported ban on **ALL BAGS** policy to discriminate against Mr. Jackson, who was wearing a bag known as a back pack.

59.  It is known on the same day Defendants denied Mr. Jackson service for the pretextual reason that he wore a bag, and later when he complied with the policy putting his bag approximately sixteen feet away from him that he was belligerent, Defendants served white and black adult females wearing bags known as purses. (See Exhibit 1: Camera 4 Primary POS C @ 8:04:16; Camera 2 Primary POS B @ 8:28:49) Before this event, on August 11, 2016, Defendants served an adult white male wearing a bag known as a purse.  (See Exhibit 5: Akron PD Incident Report #16-020141[2])

---

[2] While public records obtained online at the below web address, the names of suspects are redacted on Exhibits 5, 6, 7 and 8.
http://online.akronohio.gov/apdonline/reportlookup/EULA.aspx?referrer=ReportLookup

60. Defendants purported "legitimate business justification" that only book bags are banned from the store, and that Mr. Jackson was not entitled to service because he was belligerent is a sham when considering the following facts.

61. Defendants knew before April 15, 2017 they caught an adult white male customer allegedly stealing by concealing store item(s) in a purse he wore. (See Exhibit 5: Akron PD Incident Report #16-020141)

62. Defendants knew before April 15, 2017 they caught an adult white female customer allegedly stealing by hiding store item(s) in a purse she wore. (See Exhibit 6: Akron PD Incident Report #16-016355)

63. Defendants knew before April 15, 2017 they caught an adult white male customer allegedly stealing by hiding store item(s) in a book bag he wore. (See Exhibit 7: Akron PD Incident Report #16-018628)

64. Defendants knew after April 15, 2017 they caught an adult white male customer allegedly stealing by hiding store item(s) in a bag. (See Exhibit 8: Akron PD Incident Report #17-019808)

65. The four police reports identified above are the only theft related events involving bags at the Speedway store from January 1, 2016 to the present according to police records maintained by the Akron Police Department.

66. All other theft related events occurring from January 1, 2016 to the present that Speedway reported to the Akron Police Department involves suspects simply walking out of the store with unpaid for items in plain view or suspects hiding items in their clothing.

67. Defendants singled out Mr. Jackson, purporting that purses are not bags and contrary to the plain language appearing on the sign, only book bags are subject to the policy, when Defendants intentionally and selectively applied the policy to discriminate against Mr. Jackson because he is a black man, a brown skinned man of color, and a man, to illegally deny him service and cause him harm when wearing a bag.

68. Merriam Webster Dictionary (https://www.merriam-webster.com/dictionary/bag) defines the noun "bag" as:

　　1: a usually flexible container that may be closed for holding, storing, or carrying something: such as
　　　a: PURSE
　　　　　especially: HANDBAG
　　　b: a bag for game

11

c: SUITCASE[3]

69. Merriam Webster Dictionary (https://www.merriam-webster.com/dictionary/all) defines the adjective "all" as:

> 2: every member or individual component of
> all men will go
> all five children were present

70. The Speedway surveillance video depicts and Akron Police Reports establish, in practice, Defendants permit:

   a. All white and black females to voluntarily carrying bags in the Store;
   b. All white males to voluntarily carry bags into the Store;
   c. All white and black females to receive service while voluntarily carrying bags in the Store;
   d. All white men to receive service when requested while voluntarily carrying bags in the Store; and
   e. Neither CSR Wilson nor CSR Nolan called police when females voluntarily carried bags in the Store, shopped in the Store wearing bags, or requested to be served on April 15, 2017.

71. In the *pro se* administrative proceeding, Speedway presented still photographs of three customers entering the store before Mr. Jackson who are seen **voluntarily** placing their bags at the front door before shopping and receiving service if requested; one Caucasian female and two Caucasian males.  These individuals are not comparators to protected class member Mr. Jackson because they **voluntarily** dropped their bags immediately upon entering the store, as the still photographs prove. (See Exhibit 4: Still photographs)

72. It is the white and black females and the white male who shop while wearing bags and who receive service that are the comparators.

73. The surveillance video, acts and omissions of CSR Wilson and CSR Nolan, and the police reports expose Speedway and its Defendants are not acting in response to a legitimate, non-discriminatory business concern and is not acting in good faith.

74. More evidence of Defendants' discriminatory conduct towards Mr. Jackson is illustrated by Speedway's statement made during the administrative proceeding:  "Mr. Jackson's claim of race discrimination is undermined by the fact that CSR Wilson is also black. It is nonsensical to suggest CSR Wilson would discriminate against Mr. Jackson on the basis of his race when she is in the same protected class."

---

[3] All caps emphasis in original text.

75. Speedway's statement illustrates Defendants' retail consumer racial and color profiling and failure to properly train and supervise its employees in a lawful manner.

76. Speedway's statement illustrates Defendant's basic failure to acknowledge the Equal Employment Opportunity Commission's policy on Race/Color Discrimination, prominently appearing on the Commission's website:

   a. "Discrimination can occur when the victim and the person who inflicted the discrimination are the same race or color."
   (https://www.eeoc.gov/laws/types/race_color.cfm)

   b. What is "Color"?
   Color discrimination occurs when a person is discriminated against based on his/her skin pigmentation (lightness or darkness of the skin), complexion, shade, or tone. Color discrimination can occur between persons of different races or ethnicities, or even between persons of the same race or ethnicity. For example, an African American employer violates Title VII if he refuses to hire other African Americans whose skin is either darker or lighter than his own.
   (https://www.eeoc.gov/policy/docs/qanda_race_color.html)

77. Black-on-Black racism and Implicit Bias against black males, including pretexting black males as criminals, exists in this Country.  A body of authoritative research has been developed by qualified experts.  See Black-on-Black Racism; The Hazards of Implicit Bias by Theodore R. Johnson, an Eric and Wendy Schmidt Fellow at New America and an adjunct professor at Georgetown University's McCourt School of Public Policy.

78. On Speedway's video surveillance a person appearing to be an adult African American female brings a stroller into the store.  (See Exhibit 1: Camera 6 Sales Floor, Camera 5 Fronter Counter @ 7:31:42 – 7:31:55). The stroller could be used to conceal store items or weapons just as easily as a bag.  The video is unclear and discovery will have to address whether a diaper or other bag was stowed in the bottom of the stroller.  This female customer was, unlike Mr. Jackson, served by Speedway and Defendants.

79. Federal and state law exist to recognize and eradicate discrimination based on race, color and sex to protect black males and males of color from being stereotyped as a criminal in the retail consumer setting.

80. Mr. Jackson knew from the actions and statements of Defendants that he was being discriminated against based upon his race, color and sex, as he knew women received service under the exact same circumstances.  Mr. Jackson perceived and knew from the unexplained rude treatment he received from CSR Wilson and CSR Nolan he was being targeted and denied service based upon his race, color and sex when he had done nothing wrong.

13

81.  Mr. Jackson was not belligerent.  Mr. Jackson did not disrupt or interfere any other Speedway customer's right to receive service from Speedway.  Mr. Jackson did not pose any risk to lawfully allow Defendants to deny him service.

82.  At all times relevant Mr. Jackson displayed appropriate conduct such that Speedway was legally obligated to serve him.  Defendants' claim that Mr. Jackson was belligerent by lawfully advocating for his rights, asking meaningful questions about the motivation underlying his discriminatory treatment, because he sought to understand why he was being treated differently from other bag carrying women, is false.  Mr. Jackson sought to understand why his civil rights and rights to accommodation were being violated.  He sought to affect change through peaceful discussion in hopes that CSR Wilson and CSR Nolan, who were rude and dismissive towards him because of his race, color and sex, would correct their illegal conduct and serve him like they served all other non-black male customers wearing bags.  Because Defendants refused service to Mr. Jackson, even when he put his bag approximately sixteen feet away from him, this lawsuit is necessary to force civil rights compliance from Defendants because Mr. Jackson is entitled to shop at Speedway free from all discrimination like women and white men.

83.  As a direct and proximate result of Speedway's discriminatory conduct that illegally targeted Mr. Jackson based on his race, color and sex as a black man and as a man when wearing a bag, Mr. Jackson was harmed when he was:

   a.  Discriminatorily denied service, even when he placed his bag approximately sixteen feet away from him;
   b.  Subjected to emotional harm, including embarrassment and humiliation before other Speedway customers who were served while he was denied service, temporary and permanent psychological harm, distress, depression, anxiety, humiliation, embarrassment, and paranoia, all of which has continued and will continue into the future as he is without adequate resources to seek necessary treatment; and
   c.  Subjected to being reported to law enforcement as belligerent and trespassing which was false.

### V.    CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
DECLARATORY JUDGMENT AND INJUNCTION
(28 U.S.C. § 2201, *et seq.*)

84.  Mr. Jackson incorporates paragraphs 1-83 as if fully incorporated and rewritten herein.

85.  An actual controversy has arisen and now exists between Mr. Jackson, a black male, and Defendants concerning Mr. Jackson's rights under the Federal and Ohio state law. A judicial declaration is necessary and appropriate at this time.

86.  A place of public accommodation is liable under 42 U.S.C. §2000a when it refuses to provide on the basis of a person's race or color, full and equal enjoyment of the public accommodation's goods, services, facilities, privileges, advantages, and accommodations.

87.  All persons within the jurisdiction of the United States, regardless of race or color, have the same right to make and enforce contracts under 42 U.S.C. § 1981.

88.  All citizens of the United States, regardless of race or color, have the same right to purchase personal property under 42 U.S.C. § 1982.

89.  Any proprietor or any employee, keeper, or manager of a place of public accommodation is liable under Ohio Revised Code § 4112.02(G) for denying to any person on the basis of race, color and sex, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

90.  Mr. Jackson desires a judicial determination of his rights against Defendants as they pertain to Mr. Jackson's right to be free from discrimination on the basis of race as a black male, on the basis of his color, and on the basis of sex as a male.

91.  In order to prevent violation of Mr. Jackson's rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring Defendants' refusal to serve Mr. Jackson a violation of his rights under Federal and Ohio state law to be free from race, color and sex discrimination.

92.  Pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that this Court issue a permanent injunction prohibiting Defendants from enforcing their ban on **ALL BAGS** policy, in order to prevent the ongoing violation of Mr. Jackson's rights.

93.  Mr. Jackson wants to be able to shop at Speedway without facing future discrimination and does not want other black men and men who wear bags to face the same discrimination he endured.

<u>SECOND CAUSE OF ACTION</u>
<u>VIOLATION OF 42 U.S.C. § 2000a</u>

94.  Mr. Jackson incorporates paragraphs 1-93 as if fully incorporated and rewritten herein.

95.  Defendant Speedway is a place of public accommodation, specifically a gas station and convenience store, which conducts business in the general stream of interstate commerce.

96.  Defendants denied Plaintiff full and equal enjoyment of Defendant Speedway's goods, services, facilities, privileges, advantages, and accommodations based upon Mr. Jackson's race and color in violation of 42 U.S.C. § 2000a.

97. Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

98. Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's race and color as a brown skinned black male.

99. By Defendants refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's race and color as a brown skinned black male.

### THIRD CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1981

100. Mr. Jackson incorporates paragraphs 1-99 as if fully incorporated and rewritten herein.

101. Defendants denied Mr. Jackson an equal right to make and enforce contracts for services based on Mr. Jackson's race and color in violation of 42 U.S.C. § 1981.

102. Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

103. Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's race and color as a brown skinned black male.

104. By Defendants' refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally and with reckless indifference deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's race and color as a brown skinned black male.

### FOURTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1982

105. Mr. Jackson incorporates paragraphs 1-104 as if fully incorporated and rewritten herein.

106. Defendants' refusal to serve Mr. Jackson based on Mr. Jackson's race and color denied Mr. Jackson of his right to purchase personal property free from discrimination in violation of 42 U.S.C. § 1982.

107. Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

108. Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's race and color as a black male.

109. By Defendants refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally and with reckless indifference deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's race and color as a black male.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF OHIO REVISED CODE § 4112.02**

110. Mr. Jackson incorporates paragraphs 1-109 as if fully incorporated and rewritten herein.

111. Defendants engaged in unlawful discriminatory practice when they deprived Mr. Jackson full and equal enjoyment of Defendant Speedway's goods, services, facilities, privileges, advantages, and accommodations based upon Mr. Jackson's race in violation of Ohio Revised Code § 4112.02(G).

112. Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

113. Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's race as a black male.

114. By Defendants refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's race as a black male.

115. On October 9, 2018, Mr. Jackson, by and through the undersigned, sent Defendant Speedway a letter notifying Defendant Speedway of the possibility of filing a civil action alleging violation of an accessibility law.

116. On November 21, 2018, Defendant Speedway responded to the undersigned, indicating no actions would be taken on behalf of Defendants.

117. Given the recent effective date of Ohio Revised Code § 4112.16 on March 20, 2019, and given the approaching statute of limitations to file this action on April 15, 2019, this particular Plaintiff did not have sufficient time to engage in an additional notice to Defendants after the effective date of March 20, 2019 in the specific manner described under R.C. § 4112.16.  Plaintiff states the spirit and intent of the new notice requirement effective March 20, 2019 was achieved with the October 9, 2018 and November 21, 2018 exchange between the parties.

118. Plaintiff Mr. Jackson requests an award of reasonable attorneys' fees and costs as well as all other available damages be awarded in this matter.

SIXTH CAUSE OF ACTION
VIOLATION OF OHIO REVISED CODE § 4112.02

119. Mr. Jackson incorporates paragraphs 1-118 as if fully incorporated and rewritten herein.

120. Defendants engaged in unlawful discriminatory practice when they deprived Mr. Jackson full and equal enjoyment of Defendant Speedway's goods, services, facilities, privileges, advantages, and accommodations based upon Mr. Jackson's color in violation of Ohio Revised Code § 4112.02(G).

121. Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

122. Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's color as a brown skinned black male.

123. By Defendants refusal to serve Plaintiff, a brown skinned male, in a place of public accommodation because he was wearing a bag, Defendants intentionally deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's color as a brown skinned black male.

124. On October 9, 2018, Mr. Jackson, by and through the undersigned, sent Defendant Speedway a letter notifying Defendant Speedway of the possibility of filing a civil action alleging violation of an accessibility law.

125. On November 21, 2018, Defendant Speedway responded to the undersigned, indicating no actions would be taken on behalf of Defendant.

126. Given the recent effective date of Ohio Revised Code § 4112.16 on March 20, 2019, and given the approaching statute of limitations to file this action on April 15, 2019, this particular Plaintiff did not have sufficient time to engage in an additional notice to Defendants after the effective date of March 20, 2019 in the specific manner described under R.C. § 4112.16.  Plaintiff states the spirit and intent of the new notice requirement effective March 20, 2019 was achieved with the October 9, 2018 and November 21, 2018 exchange between the parties.

127. Plaintiff Mr. Jackson requests an award of reasonable attorneys' fees and costs as well as all other available damages be awarded in this matter.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF OHIO REVISED CODE § 4112.02

128.  Mr. Jackson incorporates paragraphs 1-127 as if fully incorporated and rewritten herein.

129.  Defendants engaged in unlawful discriminatory practice when it deprived Mr. Jackson full and equal enjoyment of Defendant Speedway's goods, services, facilities, privileges, advantages, and accommodations based upon Mr. Jackson's sex in violation of Ohio Revised Code § 4112.02(G).

130.  Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

131.  Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's sex as a male.

132.  By Defendants refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally deprived Mr. Jackson the same rights as are enjoyed by female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's sex as a male.

133.  On October 9, 2018, Mr. Jackson, by and through the undersigned, sent Defendant Speedway a letter notifying Defendant Speedway of the possibility of filing a civil action alleging violation of an accessibility law.

134.  On November 21, 2018, Defendant Speedway responded to the undersigned, indicating no actions would be taken on behalf of Defendant.

135.  Given the recent effective date of Ohio Revised Code § 4112.16 on March 20, 2019, and given the approaching statute of limitations to file this action on April 15, 2019, this particular Plaintiff did not have sufficient time to engage in an additional notice to Defendants after the effective date of March 20, 2019 in the specific manner described under R.C. § 4112.16.  Plaintiff states the spirit and intent of the new notice requirement effective March 20, 2019 was achieved with the October 9, 2018 and November 21, 2018 exchange between the parties.

136.  Plaintiff Mr. Jackson requests an award of reasonable attorneys' fees and costs as well as all other available damages be awarded in this matter.

## EIGHTH CAUSE OF ACTION
## COMMON LAW NEGLIGENT SUPERVISION

137.  Mr. Jackson incorporates paragraphs 1-136 as if fully incorporated and rewritten herein.

138. Defendants' actions constitute negligent supervision under the common law of the State of Ohio and proximately harmed Mr. Jackson.

NINTH CAUSE OF ACTION
COMMON LAW NEGLIGENT TRAINING

139. Mr. Jackson incorporates paragraphs 1-138 as if fully incorporated and rewritten herein.

140. Defendants' actions constitute negligent training under the common law of the State of Ohio and proximately harmed Mr. Jackson.

**VI.    JURY DEMAND**

Plaintiff requests a jury trial on all claims triable to a jury.

**VII.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Terrence Jackson requests this Court award:

1. A judgment for declaratory relief establishing that Defendants' actions constitute a violation of federal and state law prohibiting discrimination with respect to race, color and sex.

2. A permanent injunction enjoining Defendants from enforcing the policy banning **ALL BAGS** against Plaintiff.

3. Judgment against Defendants in favor of Plaintiff;

4. Compensatory damages in an amount to be shown at trial;

5. Actual damages in an amount to be shown at trial;

6. Nominal damages;

7. Punitive damages;

8. Costs incurred in this action and reasonable attorneys' fees under both federal and state law;

9. Pre-judgment and post-judgment interest; and

10. Such other relief as this Court deems reasonable, just or equitable.

Respectfully submitted,

s/ Lynnette Dinkler
Lynnette Dinkler (0065455), Trial Counsel
lynnette@dinklerlaw.com
Andrew Heck (0096727), Co-Trial Counsel
andrew@dinklerlaw.com
DINKLER LAW OFFICE, LLC
5335 Far Hills Avenue, Suite 123
Dayton, OH  45429
(937) 426-4200
(866) 831-0904 - Fax
*Attorneys for Plaintiff Terrence Jackson*