**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TERRENCE JACKSON,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 5:19-cv-00806 |
| v. | : | |
| | : | Judge John R. Adams |
| **SPEEDWAY LLC, et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
COMPLAINT FOR DAMAGES, AND DECLARATORY JUDGMENT, AND
PERMANENT RELIEF**

NOW COME Defendants Shatonya Wilson ("Defendant Wilson"), Michelle Nolan ("Defendant Nolan" and together with Defendant Wilson, "Individual Defendants"), and Speedway LLC ("Defendant Speedway"), herein collectively referred to as ("Defendants"), by and through undersigned counsel, and hereby submit the following answer and affirmative defenses to Plaintiff's Complaint for Damages, and Declaratory Judgment, and Permanent Relief.

# I.   PRELIMINARY STATEMENT

1.     This public accommodation civil rights case challenges Speedway's refusal to serve Terrence Jackson, a 41-year-old black male with brown colored skin, on April 15, 2017. Mr. Jackson, a peaceful Akron resident wanted to purchase a couple cans of beer and was debating on a hot sub on his way home after an evening at the University of Akron Library. Mr. Jackson was dressed in a brown t-shirt, black sweatpants, and was wearing his bag, a backpack, when he entered Speedway Store 3634. The store clerks, Customer Service Representatives Shatoyna Wilson and Michelle Nolan[1], refused to serve Mr. Jackson for the unlawful pretextual reason that he was carrying a bag. When Mr. Jackson asked why he was being treated differently than the female customers receiving service while wearing bags, purses, CSR Nolan called the police, reporting Mr. Jackson as a belligerent customer who refused to leave the store. Speedway's sign policy banning **ALL BAGS** reads:

PLEASE
LEAVE
**ALL BAGS**
AT THE DOOR
THANK YOU FOR YOUR CO-OPERATION

Speedway uses security surveillance cameras and off-duty police officers. The surveillance video depicts Mr. Jackson behaving peacefully when he shopped, when he presented at the check-out counter for service, and when he was denied service by both CSR Wilson and CSR Nolan. CSR Wilson and CSR Nolan stated they do not consider "purses" to be banned by the policy banning ALL BAGS. Speedway describes its policy differently, stating: "Due to significant theft-related losses and security issues at Store 3634 in Akron, OH, the store implemented a policy whereby customers were required to leave book bags at a designated area near the front entrance upon entering the store." The policy does not state "book bags," it states ALL BAGS. The surveillance video depicts Defendants serving adult white and black female customers wearing bags known as purses. Akron Police Report #16-020141 states Defendants served an adult white male wearing a bag known as a purse. Akron Police Reports #16-016355, #16- 018628 and #17-019808 illustrate Defendants knowledge that a white adult female used her "purse" to steal Store merchandise; a white adult male used his "book bag" to steal Store merchandise; and an adult white male used his "bag" to steal Store merchandise. Defendants' proffered legitimate non-discriminate business justifications are illegal pretext. A ban on ALL BAGS means just that: purses, book bags, backpacks, bags, diaper bags, not just "book bags" the day Mr. Jackson attempts to receive service while wearing a backpack. Mr. Jackson brings this civil rights and state law action to secure fair compensation, a declaration of Speedway's discriminatory enforcement of its policy banning ALL BAGS to protected class member Mr. Jackson, an order enjoining future discriminatory practices, and to encourage Defendants and others to refrain from discriminatorily enforcing policies against black men and men of color. Defendants engaged in retail consumer profiling because Mr. Jackson was "shopping while black."

---

[1] Hereafter referenced as CSR Wilson and CSR Nolan

**ANSWER:**    Defendants state that the documents titled "Akron Police Report #16-020141, #16-016355, #16- 018628 and #17-019808" and the sign titled "ALL BAGS" (the "Sign") all speak for themselves, but deny these police reports or this Sign demonstrate Plaintiff was treated unlawfully or in a discriminatory manner.  Defendants admit that Store 3634 utilizes video surveillance cameras and sometimes has off-duty police officers present. The Individual Defendants admit that customers of Store 3634 are not required to leave purses or wallets at the door.  Defendant Speedway admits the Sign was implemented due to significant theft-related losses and security issues at Store 3634 in Akron, OH, whereby customers were required to leave book bags at a designated area near the front entrance upon entering the store.  Defendants further admit that Plaintiff was wearing a brown t-shirt, black pants and a backpack when he entered Store 3634.  Defendants also admit that the Individual Defendants did not serve Plaintiff when he behaved in a disruptive manner on or about April 15, 2017, but deny Plaintiff was denied service for any unlawful or pretextual reason.  Defendants admit that Defendant Nolan called the police at Plaintiff's request when he became disruptive and refused to leave the store. Defendants admit that Plaintiff filed the above captioned lawsuit alleging violations of public accommodation laws and seeking injunctive relief as well as damages, but deny that the lawsuit has merit.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's age, residency or purchase intentions on or about April 15, 2017 and, therefore, deny the same.  Defendants deny they discriminatorily enforced policies against black men or men of color or engaged in retail consumer profiling because Plaintiff was "shopping while black." Except as expressly admitted, Defendants deny the allegations in paragraph 1 of the Complaint.

2.     This action is brought pursuant to 42 U.S.C. § 2000a, 42 U.S.C. § 1981, 42 U.S.C. § 1982, Ohio's anti-discrimination laws contained in Ohio R.C. Chapter 4112, et. seq., and Ohio common law.

**ANSWER:**    Defendants admit that Plaintiff purports to bring this action pursuant to 42 U.S.C. § 2000a, 42 U.S.C. § 1981, 42 U.S.C. § 1982, Ohio's anti-discrimination laws contained in Ohio R.C. Chapter 4112, et. seq., and Ohio common law, but deny that this action has any merit.

3.     Mr. Jackson seeks an award of compensatory damages for his non-economic damages, actual damages, nominal damages, punitive damages, injunctive relief, declaratory relief, equitable relief, and an award of his reasonable attorney fees and costs.

**ANSWER:**    Defendants admit that Plaintiff seeks damages and other relief for his alleged claims against Defendants, but deny that they are liable to Plaintiff for any damages or that Plaintiff is entitled to any relief.  Except as specifically admitted, Defendants deny the allegations in paragraph 3 of the Complaint.

## II.     JURISDICTION AND VENUE

4.     This Court has jurisdiction over Mr. Jackson's federal claims pursuant to 28 U.S.C. § 1331. This Court may assume supplemental jurisdiction over Jackson's claims under Ohio law pursuant to 28 U.S.C. § 1367 because those claims derive from the same nucleus of operative facts as his federal claims.

**ANSWER:**    Defendants admit that the Court has jurisdiction over this case but state that jurisdiction cannot be conferred by admission.  Except as expressly admitted, Defendants deny the allegations in paragraph 4 of the Complaint.

5.     Venue properly lies in this forum pursuant to 28 U.S.C. §1391(b)(1)-(2) as the acts and omissions or failures to act took place, at least in part, at Speedway Store #3634 located at 293 E. Market Street, Akron, Ohio. Venue also properly lies in this forum as Speedway does substantial business in Ohio and employed CSR Wilson and CSR Nolan in this forum.

**ANSWER:**    Defendants admit that venue for this case is proper in this Court, but deny they engaged in any conduct, omissions or failures giving rise to Plaintiff's claims.  Except as expressly admitted, Defendants deny the allegations in paragraph 5 of the Complaint.

6. While Mr. Jackson denies such obligation, any alleged obligation to exhaust administrative remedies has been fulfilled. Mr. Jackson timely filed a charge of public accommodation, race discrimination and gender discrimination arising out of the facts and circumstances herein on October 13, 2017, EEOC 22A-2018-00135F, OCRC AKRG3(39231)10122017. The notification letter denying the charge for lack of probable cause was mailed April 26, 2018.

**ANSWER:** Defendants admit that Plaintiff filed a charge of public accommodation, race discrimination and gender discrimination against Defendant Speedway only on or about October 13, 2017 as EEOC 22A-2018-00135F, OCRC AKRG3(39231)10122017 which was denied for lack of probable cause on or about April 26, 2018. Except as expressly admitted, Defendants deny the allegations in paragraph 6 of the Complaint.

### III.    PARTIES

7. Plaintiff Mr. Terrence Jackson is an adult African American male who is a resident of the Akron, Summit County, Ohio community, and brings this action on his own behalf.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint and, therefore, they deny the same.

8. Defendant Speedway, LLC ("Speedway") operates 24/7 fueling and convenience stores. At all times relevant to this action, Speedway operated and continues to operate a fueling and convenience store, Store 3634, located at 293 E. Market Street, Akron, Ohio. At all times relevant to this action, Speedway Store 3634 was and is open to the public for service.

**ANSWER:** Defendants admit the allegations in paragraph 8 of the Complaint.

9. Speedway's statutory agent is CT Corporation System.

**ANSWER:** Defendants admit the allegations in paragraph 9 of the Complaint.

10. Speedway's principal place of business is located at 500 Speedway Drive, Enon, Clark County, Ohio.

**ANSWER:** Defendants admit the allegations in paragraph 10 of the Complaint.

11.     Speedway does business throughout the State of Ohio and in other states.

**ANSWER:**     Defendants admit the allegations in paragraph 11 of the Complaint.

12.     Speedway employed CSR Wilson to wait on Speedway customers and carry out store operations at all times relevant to this action. CSR Wilson is believed to be an adult African American female. CSR Wilson is sued individually and in her official capacity as an employee of Speedway for the actions/inactions she took in the scope and course of her employment.

**ANSWER:**     Defendants admit Defendant Speedway employed Defendant Wilson as a customer service representative.  Defendants further admit that Defendant Wilson is an adult African American female and Plaintiff has filed the above captioned lawsuit against her individually and in her capacity as an employee of Defendant Speedway, but deny that Defendants engaged in any conduct, action or inaction that give rise to liability for any of Plaintiff's claims. Except as specifically admitted, Defendants deny the allegations in paragraph 12 of the Complaint.

13.     Speedway employed CSR Nolan to wait on Speedway customers and carry out store operations at all times relevant to this action. CSR Nolan is believed to be an adult Caucasian female. CSR Nolan is sued individually and in her official capacity as an employee of Speedway for the actions/inactions she took in the scope and course of her employment.

**ANSWER:**     Defendants admit Defendant Speedway employed Defendant Nolan as a customer service representative.  Defendants further admit that Defendant Nolan is an adult Caucasian female and Plaintiff has filed the above captioned lawsuit against her individually and in her capacity as an employee of Defendant Speedway, but deny that Defendants engaged in any conduct, action or inaction that give rise to liability for any of Plaintiff's claims. Except as specifically admitted, Defendants deny the allegations in paragraph 13 of the Complaint.

14.     Speedway employed Jane/John Does 3 through 10, at all times relevant to this action, to provide creation of store policy and procedure, training on store policy and procedure, supervision, and management to operate Speedway Store 3634 and other stores. Jane/John Does 3 through 10 are sued individually and in their official capacities as employees of Speedway for the actions/inactions they took in the scope and course of their employment. The benefit of Federal Civil Procedure Rule 26 disclosures and discovery is needed in order to identify Jane/John Does 3 through 10, all of whom are readily known and can be identified by Speedway.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint and, therefore, they deny the same.

## IV.     BACKGROUND AND ALLEGATIONS

15.     Mr. Jackson, a bachelor with no children, on or about Saturday April 15, 2017, entered Speedway Store 3634, on E. Market Street on his way home following an evening at the University of Akron library. While not enrolled in classes at that time, he was a few credits shy of earning an associate degree in criminal justice. Mr. Jackson suffers from depression and the event giving rise to this lawsuit caused him additional psychological harm. For employment, Mr. Jackson then worked and continues to work temporary jobs in the industrial/warehouse industry as he is able.

**ANSWER:**     Defendants admit that Plaintiff entered Store 3634 on or about April 15, 2017.  Defendants deny that they have caused Plaintiff any psychological harm.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15 of the Complaint and, therefore, they deny the same.

16.     Mr. Jackson travelled on foot that evening and carried his laptop which he was using at the library in his bag. The type of bag Mr. Jackson wore is described as a backpack. His laptop is one of the most expensive possessions he owns, and he is very careful with it.

**ANSWER:**     Defendants admit that Plaintiff was wearing a backpack.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 16 of the Complaint and, therefore, they deny the same.

17.     Mr. Jackson decided to enter Speedway to grab a few beers and possibly a sub sandwich to eat before heading home.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and, therefore, they deny the same.

18.     The Speedway Store is monitored by video surveillance and the following events, as noted by video time-stamps, occurred at the Speedway Store and are captured on the video. A true and accurate copy of Speedway's video surveillance recording is being filed manually as Plaintiff's Exhibit 1.

**ANSWER:**     Defendants state that surveillance video recording attached to Plaintiff's Complaint as Exhibit 1 speaks for itself.  Defendants admit that Store 3634 is monitored by video surveillance and some of the events relevant to this lawsuit were captured on video.  Except as expressly admitted, Defendants deny the allegations in paragraph 18 of the Complaint

19.     At approximately 7:43:36 p.m. Mr. Jackson, dressed in a brown t-shirt and black sweatpants, backpack hanging from both shoulders, clean shaven with a bald head enters the Speedway Store. (See Exhibit 1: Camera 6 Sales Floor @ 7:43:36)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 6 Sales Floor @ 7:43:36" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself.  Defendants admit Plaintiff was wearing a brown shirt, black pants and a backpack hanging from both shoulders that entered Store 3634 but denies that this video segment demonstrates that Plaintiff was treated unlawfully or illegally denied service by Defendants. Except as expressly admitted, Defendants deny the allegations in paragraph 19 of the Complaint.

20.     Mr. Jackson selected three cans of beer, having decided not to purchase a sub sandwich, and headed towards the register to check-out wearing his bag. (See Exhibit 1: Camera 5 Fronter Counter @ 7:46:50-7:47:34)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 5 Fronter Counter @ 7:46:50-7:47:34" attached to Plaintiff's Complaint in Exhibit 1 speaks for

itself.  Defendants admit that Plaintiff approached the register with his backpack with three beverages, but deny that this video segment demonstrates that Plaintiff was treated unlawfully or in a discriminatory manner. Except as expressly admitted, Defendants deny the allegations in paragraph 20 of the Complaint.

21.    Mr. Jackson wore his bag while he shopped peacefully, selecting his items for purchase. (See Exhibit 1: Camera 5 Fronter Counter @ 7:46-50-7:47:34)

**ANSWER:**    Defendants state that the surveillance video segment titled "Camera 5 Fronter Counter @ 7:46-50-7:47:34" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself.  Defendants admit that Plaintiff shopped while he wore his bag, but deny that he shopped peacefully or that this video segment demonstrates that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants. Except as expressly admitted, Defendants deny the allegations in paragraph 21 of the Complaint.

22.    When done shopping, Mr. Jackson set three cans of beer on one of the check-out counters. This check-out counter was being serviced by CSR Wilson. (See Exhibit 1: Camera 4 Primary POS C @ 7:47:35)

**ANSWER:**    Defendants state that the surveillance video segment titled "Camera 4 Primary POS C @ 7:47:35" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself. Defendants admit Plaintiff set beverages down at the counter where Defendant Wilson was working, but deny that this video segment demonstrates that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants. Except as expressly admitted, Defendants deny the allegations in paragraph 22 of the Complaint.

23.     Mr. Jackson expected to be permitted to pay for his three items and be on his way.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and, therefore, they deny the same.

24.     The glass partition at the check-out counter was open when Mr. Jackson approached, and CSR Wilson chose to keep it open while having contact with Mr. Jackson. (See Exhibit 1: Camera 4 Primary POS C @7:47:35)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 4 Primary POS C @7:47:35" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself. Defendants admit Defendant Wilson's glass partition remained opening during her initial encounter with Plaintiff, but deny that this video segment demonstrates that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants. Except as expressly admitted, Defendants deny the allegations in paragraph 24 of the Complaint.

25.     CSR Wilson refused to allow Mr. Jackson to purchase the three cans of beer, denying him service. (See Exhibit 1: Camera 4 Primary POS C @ 7:47:35-7:48:34)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 4 Primary POS C @ 7:47:35-7:48:34" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself. Defendants admit that Defendant Wilson declined to provide Plaintiff service when he became disruptive and failed to comply with the rules posted on the Sign, but deny that this video segment demonstrates that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants. Except as expressly admitted, Defendants deny the allegations in paragraph 25 of the Complaint.

26.     After refusing Mr. Jackson service, CSR Wilson leaves a secure booth, with the glass window still open giving Mr. Jackson open access to the cash register and all other items within the booth. CSR Wilson then completely turns her back to Mr. Jackson, who is still standing at the check-out counter, and walks towards the front entrance of the Store. (See Exhibit 1: Camera 4 Primary POS C @7:48:08 and Camera 5 Fronter Counter @7:48:11)

**ANSWER:**    Defendants state that the surveillance video segments titled "Camera 4 Primary POS C @7:48:08 and Camera 5 Fronter Counter @7:48:11" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves.  Defendants admit that Defendant Wilson left her cash register to walk over to the Sign posted at the front entrance in order to explain to Plaintiff that he needed to comply with Store 3634's rules, but deny that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants. Except as expressly admitted, Defendants deny the allegations in paragraph 26 of the Complaint.

27.    CSR Wilson points to a 8.5 x 11 inch sign posted to the right side of the front door which reads:

PLEASE
LEAVE
**ALL BAGS**
AT THE DOOR
THANK YOU FOR YOUR CO-OPERATION

**ANSWER:**    Defendants admit the allegations in paragraph 27 of the Complaint.

28.    A true and accurate photograph of the sign taken from outside the store is attached as Plaintiff's Exhibit 2.

**ANSWER:**    Defendants state that the photograph of the Sign attached to Plaintiff's Complaint in Exhibit 1 speaks for itself.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint and, therefore, they deny the same.

29.    The ban on **ALL BAGS** policy, upon information and belief, has been in effect from at least fall 2015 to the present.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint and, therefore, they deny the same.

30.     Mr. Jackson had been in this Store before April 15, 2017 and had observed women being served who wore bags. Therefore, Mr. Jackson asked CSR Wilson and CSR Nolan to explain why the Speedway Store served woman who carried bags, but the same Speedway Store was denying him service because he is carrying a bag.

**ANSWER:**     Defendants admit that Plaintiff became disruptive when he observed another woman wearing a purse and was denied service due to such disruptive conduct. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30 of the Complaint and, therefore, they deny the same.

31.     Speedway and Defendants created, trained on and supervised the enforcement of the policy banning **ALL BAGS** because Defendants knew shoplifters used a variety of different bags to hide items when shoplifting.

**ANSWER:**     Defendants admit the Sign was implemented at Defendant Speedway's Store 3634 due to significant theft-related losses and security issues at Store 3634 in Akron, OH, whereby customers were required to leave book bags at a designated area near the front entrance upon entering the store.  Defendants deny the remaining allegations in paragraph 31 of the Complaint.

32.     Before and after April 15, 2017, Defendants intentionally and selectively applied the policy banning **ALL BAGS** to serve white and black women and to serve white men wearing bags.

**ANSWER:**     Defendants deny the allegations in paragraph 32 of the Complaint.

33.     CSR Wilson and CSR Nolan refused Mr. Jackson service, who was wearing a bag on the illegal pretext that they were acting in compliance with Speedway's policy banning "**ALL BAGS**," in violation of his rights under federal and state law.

**ANSWER:**     Defendants deny the allegations in paragraph 33 of the Complaint.

12

34.     On April 15, 2017 CSR Wilson and CSR Nolan both told Mr. Jackson "purses are not bags" in response to his inquiry for a non-discriminatory reason as to why women with purses were not ordered to drop their bags at the front store before shopping and before receiving service when he was ordered to do both and then denied service.

**ANSWER:**     The Individual Defendants admit that they informed Plaintiff that purses and wallets were not considered bags subject to the Sign.  Defendant Speedway lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of the Complaint and, therefore, denies the same.  Except as expressly admitted, Defendants deny the allegations in paragraph 34 of the Complaint.

35.     CSR Wilson returned to the check-out counter upon which Mr. Jackson's three selected beers sat and then she moves to a different check-out counter. (See Exhibit 1: Camera 4 Primary POS C @7:48:31). Mr. Jackson picks up the cans of beer, puts one back deciding to spend less as he thought he may purchase food at some point, and moves them to the new check-out counter CSR Wilson is operating. (See Exhibit 1: Camera 5 Fronter Counter and Camera 2 Primary POS B @ 7:48:45). CSR Wilson immediately moves the cans of beer out of Mr. Jackson's reach to the left of her work area. (See Exhibit 1: Camera 2 Primary POS B @ 7:49:27). CSR Wilson continues to refuse Mr. Jackson service and successfully waits on other customers.

**ANSWER:**     Defendants state that the surveillance video segments titled "Camera 4 Primary POS C @7:48:31, Camera 5 Fronter Counter and Camera 2 Primary POS B @ 7:48:45, and Camera 2 Primary POS B @ 7:49:27" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves.  Defendants admit that Defendant Wilson moved certain beverages to the left of her workstation as a result of Plaintiff's disruptive conduct, but deny that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants. Except as expressly admitted, Defendants deny the allegations in paragraph 35 of the Complaint.

36.     According to the Akron Police Department CAD Incident record CSR Nolan placed a 911 call in reference to the Speedway Store at 7:52:12 PM reporting "customer refuses to leave" and describes the subject, Mr. Jackson, as a black 40 year old male wearing a brown T-shirt, black pants, clean shaven and bald head.

**ANSWER:**     Defendants state that the Akron Police Department CAD Incident record attached as Exhibit 3 to the Complaint speaks for itself.  Defendants admit that Defendant Nolan called the Akron police at Plaintiff's request when he became disruptive. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 of the Complaint and, therefore, they deny the same.

37.     The emergency 911 report made by Speedway was documented by the dispatcher as follows, "Said that he was being belligerent and they were refusing to serve [him] and he would not leave." Before placing the call, she threatened Mr. Jackson with the call to police, which he welcomed because he knew he had done nothing wrong and so that the discriminatory event he was experiencing would be documented. CSR Nolan then told Mr. Jackson the surveillance video would also document the event, which Mr. Jackson replied he also welcomed because it would show he had done nothing wrong and that he was being discriminated against.

**ANSWER:**     Defendants state the emergency 911 report speaks for itself.  Defendants admit that Defendant Nolan called the Akron police at Plaintiff's request when he became disruptive.  Defendants deny they were involved in any discriminatory event related to Plaintiff. Defendants further deny that Plaintiff did nothing wrong.  Defendants also deny Plaintiff was being discriminated against.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37 of the Complaint and, therefore, they deny the same.

38.     Speedway's emergency 911 call did not report Mr. Jackson to be in violation of Speedway's ban on ALL BAGS policy.

**ANSWER:**     Defendants state emergency 911 report speaks for itself.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38 of the Complaint and, therefore, they deny the same.

39.     After the 911 call was made, CSR Wilson began to point towards the door more than once telling Mr. Jackson he must comply with ban on ALL BAGS policy. (See Exhibit 1: Camera 2 Primary POS B @ 7:53:10 and 7:54:10)

**ANSWER:**     Defendants state that the surveillance video segments titled "Camera 2 Primary POS B @ 7:53:10 and 7:54:10" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves.  Defendants deny that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 of the Complaint and, therefore, they deny the same.

40.     In the meantime, as there is no reason to perceive Mr. Jackson as a safety threat or theft risk, CSR Nolan appears on Speedway surveillance video with a cigarette in her mouth while putting on her Speedway safety vest to mop the floor. (See Exhibit 1: Camera 5 Fronter Counter @ 7:54:22)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 5 Fronter Counter @ 7:54:22" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself. Defendants deny that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants.  Defendants deny the remaining allegations in paragraph 40 of the Complaint.

41.     CSR Wilson closes the glass partition to the check-out counter she is standing behind and heads out to mill about store where Mr. Jackson is situated. (See Exhibit 1: Camera 2 Primary POS B and Camera 4 Primary POS C @7:54:54-7:55:41)

**ANSWER:**     Defendants state that the surveillance video segments titled "Camera 2 Primary POS B and Camera 4 Primary POS C @7:54:54-7:55:41" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves.  Defendants admit that Defendant Wilson closed both glass partitions consistent with Store 3634's policy of doing so around 8:00 p.m. for safety reasons.  Defendants deny that these video segments demonstrate that Plaintiff was treated

15

unlawfully or in a discriminatory manner by Defendants.  Defendants deny the remaining allegations in paragraph 41 of the Complaint.

42.     Then CSR Nolan, who appears to be smoking again in her Speedway safety vest, exits the front door which is near the fuel pumps. (See Exhibit 1: Camera 6 Sales Floor @ 7:55:51)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 6 Sales Floor @ 7:55:51" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself.  Defendants admit that Defendant Nolan exited the front door near the fuel pumps in her yellow safety vest. Defendants deny that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants.  Except as expressly admitted, Defendants deny the allegations in paragraph 42 of the Complaint.

43.     CSR Wilson, after milling about the Store floor for about 90 seconds re-enters the check-out booth and waits on another customer. (See Exhibit 1: Camera 4 Primary POS C @ 7:56:36)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 4 Primary POS C @ 7:56:36" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself. Defendants admit that Defendant Wilson waited on a customer through her glass partition. Defendants deny that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants.  Except as expressly admitted, Defendants deny the allegations in paragraph 43 of the Complaint.

44.     At 7:58:36 Mr. Jackson walks to the front Store door, looks outside to see if the police officer has arrived yet, and then returns inside the store. (See Exhibit 1: Camera 6 Sales Floor @ 7:58:36)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 6 Sales Floor @ 7:58:36" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself.  Defendants admit that Plaintiff looked outside the front door, but deny that these video segments demonstrate that

Plaintiff was treated unlawfully or in a discriminatory manner by Defendants. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 44 of the Complaint and, therefore, they deny the same.

45.     Next CSR Nolan re-enters the Store and takes her position in the check-out booth. Mr. Jackson approaches her to learn if she will allow him to purchase the cans of beer that were placed by CSR Wilson in the check-out booth. CSR Nolan refused Mr. Jackson service because he is carrying a bag. (See Exhibit 1: Camera 6 Sales Floor, Camera 5 Fronter Counter, and Camera 4 Primary POS C @ 7:59:13-8:00:03)

**ANSWER:**     Defendants state that the surveillance video segments titled "Camera 6 Sales Floor, Camera 5 Fronter Counter, and Camera 4 Primary POS C @ 7:59:13-8:00:03" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves. Defendants admit that when Defendant Nolan was at her workstation, she did not provide service to Plaintiff due to his disruptive conduct, but deny that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants. Except as expressly admitted, Defendants deny the allegations in paragraph 45 of the Complaint.

46.     At 8:01:26, in one last good faith effort to obtain service, despite the fact it is clear Mr. Jackson poses no criminal or safety threat of any kind whatsoever, Mr. Jackson places his bag on a product display unit approximately sixteen feet from the check-out booth. He first approaches the check-out counter of CSR Nolan, to purchase the cans of beer behind the counter and she still refuses him service. Then he approaches the check-out counter of CSR Wilson to purchase the cans of beer behind the counter and she still refuses him service. Mr. Jackson retrieves his bag, puts it back on, and walks out of the store. He popped his head in the door to see if the police had arrived yet, a few seconds later and seeing none, Mr. Jackson entered the BP across the street wearing his backpack, made his purchases without incident, and then continued to wait outside Speedway for the Akron police to arrive to document the discrimination he experienced. (See Exhibit 1: Camera 5 Fronter Counter, Camera 4 Primary POS C, and Camera 6 Sales Floor @ 8:01:26 -8:02:44)

**ANSWER:**     Defendants state that the surveillance video segments titled "Camera 5 Fronter Counter, Camera 4 Primary POS C, and Camera 6 Sales Floor @ 8:01:26 -8:02:44" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves. Defendants admit that Plaintiff

placed his bag on the candy display instead of at area designated by the Sign at the front entrance

to Store 3634.  Defendants admit Plaintiff was not provided with service by either Individual

Defendant while he continued to engage in disruptive conduct.  Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 46

of the Complaint and, therefore, they deny the same.


47.     Akron Police Officer Stewart walked into the Store at 8:06:42 and spoke briefly
with CSR Wilson for five seconds and then leaves the Store. (See Exhibit 1: Camera 6 Sales Floor,
Camera 5 Fronter Counter, and Camera 2 Primary POS B @8:06:42 – 8:07:41)

**ANSWER:**     Defendants state that the surveillance video segments titled "Camera 6 Sales

Floor, Camera 5 Fronter Counter, and Camera 2 Primary POS B @8:06:42 – 8:07:41" attached to

Plaintiff's Complaint in Exhibit 1 speak for themselves.  Defendants admit that a police officer

entered Store 3634 and spoke with Defendant Wilson before departing, but deny that these video

segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by

Defendants.  Except as expressly admitted, Defendants deny the allegations in paragraph 47 of the

Complaint.


48.     Officer Stewart spoke with Mr. Jackson for approximately twenty minutes, during
which time Mr. Jackson explained that he was refused service not because of his backpack but
because he is a male and he is a black male. Officer Stewart did not cite Mr. Jackson for any
offense as he had done nothing illegal and cleared the scene at 8:26:06, noting "Terrance [sic]
Jackson (B/M/41) said the policy of persons (primarily males) leaving backpacks at door is
discrimination, because they don't apply same policy to females." (See Exhibit 3: Akron Police
Department CAD Incident Report)

**ANSWER:**     Defendants state that the Akron Police Department CAD Incident Report

attached to Plaintiff's Complaint as Exhibit 3 speaks for itself.  Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48

of the Complaint and, therefore, they deny the same.

49.     Speedway's surveillance video reveals Defendants are writing policy with the intent to illegally enforce it; training on policy to illegally enforce it; supervising employees to ensure the policy banning ALL BAGS is intentionally and selectively enforced to discriminate against Mr. Jackson. As a direct and proximate result, Defendants engaged in illegal discriminatory consumer profiling based upon race, color of skin and sex as its justification to intentionally and selectively deny Mr. Jackson service based upon his sex as a black male, based upon his color as a black male, and based upon his race.

**ANSWER:**     Defendants deny the allegations in paragraph 49 of the Complaint.


50.     Before Mr. Jackson was illegally denied service by both CSR Wilson and CSR Nolan, a person appearing to be an adult Caucasian female wearing a bag in the form of a large purse on one of her shoulders had been provided service (before start of video surveillance) as she is seen exiting the Store with a beverage in hand. (See Exhibit 1: Camera 6 Sales Floor @ 7:31:48)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 6 Sales Floor @ 7:31:48" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself.  Defendants admit an adult Caucasian female wearing a purse on one of her shoulders exited Store 3634, but deny that this video segment demonstrates that Plaintiff was illegally denied service.  Except as expressly admitted, Defendants deny the allegations in paragraph 50 of the Complaint.

**ANSWER:**


51.     While Mr. Jackson was illegally being denied service, a person appearing to be an adult Caucasian female wearing a bag in the form of a small purse on one of her shoulders enters the Store, has discussion with CSR Wilson in the presence of Mr. Jackson, and is not asked to leave the store. This female does not appear to attempt to make a purchase. (See Exhibit 1: Camera 6 Sales Floor and Camera 5 Fronter Counter @ 7:52:33 – 7:53:25)

**ANSWER:**     Defendants state that the surveillance video segments titled "Camera 6 Sales Floor and Camera 5 Fronter Counter @ 7:52:33 – 7:53:25" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves.  Defendants admit an adult Caucasian female wearing a purse approaches Defendant Wilson, but deny that this video segment demonstrates that Plaintiff was illegally denied service.  Except as expressly admitted, Defendants deny the allegations in paragraph 51 of the Complaint.

52.     While Mr. Jackson was illegally being denied service, a person appearing to be an adult Caucasian female carrying a bag in the form of a wallet purse is not asked to leave the Store and is provided service by CSR Nolan. (See Exhibit 1: Camera 4 Primary POS C @ 8:04:21)

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 4 Primary POS C @ 8:04:21" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself. Defendants admit an adult Caucasian female wearing a purse is provided service by Defendant Nolan, but denies that this video segment demonstrates that Plaintiff was illegally denied service or treated unlawfully.  Defendants further deny that Plaintiff was illegally denied service.  Except as expressly admitted, Defendants deny the allegations in paragraph 52 of the Complaint.

53.     After Mr. Jackson was illegally denied service and left the Store, three people appearing to be Caucasian females enter the Store, at least one is carrying a bag in the form of a purse on one of her shoulders, and none of the females are asked to leave. (See Exhibit 1: Camera 6 Sales Floor @ 8:28:06 – 8:28:09) Because the surveillance video ends it is unknown if the women receive service.

**ANSWER:**     Defendants state that the surveillance video segment titled "Camera 6 Sales Floor @ 8:28:06 – 8:28:09" attached to Plaintiff's Complaint in Exhibit 1 speaks for itself. Defendants deny that Plaintiff was illegally denied service.  Defendants further deny that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 of the Complaint and, therefore, they deny the same. Except as expressly admitted, Defendants deny the allegations in paragraph 53 of the Complaint.

54.     After Mr. Jackson was illegally denied service and left the Store, a person appearing to be an adult African American female wearing a very large bag in the form of a purse on one of her shoulders enters the Speedway Store at 8:25:31. (See Exhibit 1: Camera 6 Sales Floor @ 8:25:31) Unlike Mr. Jackson, this adult black female is never instructed to drop the bag at the front door, is never denied service, and is never asked to leave the store because she is wearing a large purse. This black female customer is seen at the window with CSR Wilson digging through her large purse. (See Exhibit 1: Camera 4 Primary POS C @ 8:27:10) In stark contrast to the treatment dealt Mr. Jackson, the black adult female customer receives help from CSR Wilson at a computer

terminal. CSR Wilson appears happy to help the adult black female customer wearing the large purse on one of her shoulders as Speedway's video surveillance depicts CSR Wilson smiling while helping the female purse wearing customer. (See Exhibit 1: Camera 5 Fronter Counter @ 8:28:30). The video surveillance recording ends as CSR Wilson provides service to the adult black female customer carrying the large purse at the check- out counter at 8:29:59. (See Exhibit 1: Camera 2 Primary POS B @ 8:29:59)

**ANSWER:**  Defendants state that the surveillance video segments titled "Camera 6 Sales Floor @ 8:25:31, Camera 4 Primary POS C @ 8:27:10, Camera 5 Fronter Counter @ 8:28:30, and Camera 2 Primary POS B @ 8:29:59" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves.  Defendants deny that Plaintiff was illegally denied service.  Defendants further deny that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory manner by Defendants.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54 of the Complaint and, therefore, they deny the same.  Except as expressly admitted, Defendants deny the allegations in paragraph 54 of the Complaint.

55.    In the pro se administrative proceeding before the Ohio Civil Rights Commission and Equal Employment Opportunity Commission, Speedway rewrote its policy banning **ALL BAGS** to only ban "book bags." Speedway stated: "Due to significant theft- related losses and security issues at Store 3634 in Akron, OH, the store implemented a policy whereby customers were required to leave book bags at a designated area near the front entrance upon entering the store." Speedway's explanation of what its policy "really means" is nothing more than a sham offered in an attempt to cover up illegal discrimination. The video surveillance and Speedway's reports made to police expose that Speedway and its Defendants serve white women, black women, and white men who carry bags despite its policy banning **ALL BAGS**. Because Mr. Jackson, on the spot, called out the discrimination, he was labeled "belligerent" and Speedway attempted to have him arrested by calling the police. The African American officer who interviewed Mr. Jackson took no law enforcement action and documented Mr. Jackson's legitimate concerns.

**ANSWER:**  Defendant Speedway admits that when defending against Plaintiff's administrative charge it stated: "Due to significant theft- related losses and security issues at Store 3634 in Akron, OH, the store implemented a policy whereby customers were required to leave

book bags at a designated area near the front entrance upon entering the store." Defendants deny

the remaining allegations in paragraph 55 of the Complaint.

56. The Speedway policy banning **ALL BAGS**, on its face, prohibits **ALL BAGS** from the Store.

**ANSWER:** Paragraph 56 of the Complaint is a legal conclusion to which no response

is required. To the extent a response is required, Defendant deny the allegations in paragraph 56

of the Complaint.

57. Defendants know many types of bags exist, including purses, book bags, backpacks, diaper bags, briefcases, tote bags, satchels, to name a few.

**ANSWER:** Defendants admit different types of bags exist. Defendants deny the

remaining allegations in paragraph 57 of the Complaint.

58. Speedway trains and supervises its employees to enforce, contrary to the plain meaning of policy, that **ALL BAGS** can be intentionally and selectively applied to serve consumers wearing bags and to not serve consumers wearing bags based upon discriminatory retail consumer profiling. All Defendants acted in compliance and in furtherance of this training and supervision to discriminatorily enforce Speedway's purported ban on **ALL BAGS** policy to discriminate against Mr. Jackson, who was wearing a bag known as a back pack.

**ANSWER:** Defendants deny the allegations in paragraph 58 of the Complaint.

59. It is known on the same day Defendants denied Mr. Jackson service for the pretextual reason that he wore a bag, and later when he complied with the policy putting his bag approximately sixteen feet away from him that he was belligerent, Defendants served white and black adult females wearing bags known as purses. (See Exhibit 1: Camera 4 Primary POS C @ 8:04:16; Camera 2 Primary POS B @ 8:28:49) Before this event, on August 11, 2016, Defendants served an adult white male wearing a bag known as a purse. (See Exhibit 5: Akron PD Incident Report #16-020141[2])

---

[2] While public records obtained online at the below web address, the names of suspects are redacted on Exhibits 5, 6, 7 and 8.
http://online.akronohio.gov/apdonline/reportlookup/EULA.aspx?referrer=ReportLookup

**ANSWER:**    Defendants state that the surveillance video segments titled "Camera 4 Primary POS C @ 8:04:16; Camera 2 Primary POS B @ 8:28:49 and Camera 2 Primary POS B @ 8:29:59" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves.  Defendants state the Akron PD Incident Report #16-020141 also speaks for itself.  Defendants admit they serve customers wearing purses or wallets.  Defendants deny they denied Plaintiff service for any pretexual reason.  Defendants further deny that Plaintiff complied with the Sign. Except as expressly admitted, Defendants deny the allegations in paragraph 59 of the Complaint.

60.    Defendants purported "legitimate business justification" that only book bags are banned from the store, and that Mr. Jackson was not entitled to service because he was belligerent is a sham when considering the following facts.

**ANSWER:**    Defendants deny the allegations in paragraph 60 of the Complaint.

61.    Defendants knew before April 15, 2017 they caught an adult white male customer allegedly stealing by concealing store item(s) in a purse he wore. (See Exhibit 5: Akron PD Incident Report #16-020141)

**ANSWER:**    Defendants state that the Akron PD Incident Report #16-020141 attached to Plaintiff's Complaint as Exhibit 5 speaks for itself.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 61 of the Complaint and, therefore, they deny the same.  Except as expressly admitted, Defendants deny the allegations in paragraph 61 of the Complaint.

62.    Defendants knew before April 15, 2017 they caught an adult white female customer allegedly stealing by hiding store item(s) in a purse she wore. (See Exhibit 6: Akron PD Incident Report #16-016355)

**ANSWER:**    Defendants state that the Akron PD Incident Report #16-016355 attached to Plaintiff's Complaint as Exhibit 6 speaks for itself.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 62 of the

Complaint and, therefore, they deny the same.  Except as expressly admitted, Defendants deny the allegations in paragraph 62 of the Complaint.

63.    Defendants knew before April 15, 2017 they caught an adult white male customer allegedly stealing by hiding store item(s) in a book bag he wore. (See Exhibit 7: Akron PD Incident Report #16-018628)

**ANSWER:**    Defendants state that the Akron PD Incident Report #16-018628 attached to Plaintiff's Complaint as Exhibit 7 speaks for itself.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 of the Complaint and, therefore, they deny the same.  Except as expressly admitted, Defendants deny the allegations in paragraph 63 of the Complaint.

64.    Defendants knew after April 15, 2017 they caught an adult white male customer allegedly stealing by hiding store item(s) in a bag. (See Exhibit 8: Akron PD Incident Report #17-019808)

**ANSWER:**    Defendants state that the Akron PD Incident Report #17-019808 attached to Plaintiff's Complaint as Exhibit 8 speaks for itself.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 64 of the Complaint and, therefore, they deny the same.  Except as expressly admitted, Defendants deny the allegations in paragraph 64 of the Complaint.

65.    The four police reports identified above are the only theft related events involving bags at the Speedway store from January 1, 2016 to the present according to police records maintained by the Akron Police Department.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 65 of the Complaint and, therefore, they deny the same.  Except as expressly admitted, Defendants deny the allegations in paragraph 65 of the Complaint.

66.     All other theft related events occurring from January 1, 2016 to the present that Speedway reported to the Akron Police Department involves suspects simply walking out of the store with unpaid for items in plain view or suspects hiding items in their clothing.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 65 of the Complaint and, therefore, they deny the same.  Except as expressly admitted, Defendants deny the allegations in paragraph 65 of the Complaint.

67.     Defendants singled out Mr. Jackson, purporting that purses are not bags and contrary to the plain language appearing on the sign, only book bags are subject to the policy, when Defendants intentionally and selectively applied the policy to discriminate against Mr. Jackson because he is a black man, a brown skinned man of color, and a man, to illegally deny him service and cause him harm when wearing a bag.

**ANSWER:**     Defendants deny the allegations in paragraph 67 of the Complaint.

68.     Merriam Webster Dictionary (https://www.merriam-webster.com/dictionary/bag) defines the noun "bag" as:

> 1: a usually flexible container that may be closed for holding, storing, or carrying something: such as
> a: PURSE
>         especially: HANDBAG
> b: a bag for game
> c: SUITCASE[3]

**ANSWER:**     Defendant state that Merriam Webster Dictionary speaks for itself. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66 of the Complaint and, therefore, they deny the same.  Except as expressly admitted, Defendants deny the allegations in paragraph 66 of the Complaint.

69.     Merriam Webster Dictionary (https://www.merriam-webster.com/dictionary/all) defines the adjective "all" as:

---

[3] All caps emphasis in original text.

25

2: every member or individual component of
all men will go
all five children were present

**ANSWER:**    Defendant state that Merriam Webster Dictionary speaks for itself.

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 67 of the Complaint and, therefore, they deny the same.  Except

as expressly admitted, Defendants deny the allegations in paragraph 67 of the Complaint.


70.    The Speedway surveillance video depicts and Akron Police Reports establish, in
practice, Defendants permit:

    a.    All white and black females to voluntarily carrying bags in the Store;
    b.    All white males to voluntarily carry bags into the Store;
    c.    All white and black females to receive service while voluntarily carrying bags in
       the Store;
    d.    All white men to receive service when requested while voluntarily carrying bags in
       the Store; and
    e.    Neither CSR Wilson nor CSR Nolan called police when females voluntarily carried
       bags in the Store, shopped in the Store wearing bags, or requested to be served on
       April 15, 2017.

**ANSWER:**    Defendants state the surveillance video speaks for itself.  Defendants deny

that these video segments demonstrate that Plaintiff was treated unlawfully or in a discriminatory

manner by Defendants.   Defendants deny the remaining allegations in paragraph 70 of the

Complaint.


71.    In the pro se administrative proceeding, Speedway presented still photographs of
three customers entering the store before Mr. Jackson who are seen voluntarily placing their bags
at the front door before shopping and receiving service if requested; one Caucasian female and
two Caucasian males. These individuals are not comparators to protected class member Mr.
Jackson because they voluntarily dropped their bags immediately upon entering the store, as the
still photographs prove. (See Exhibit 4: Still photographs)

**ANSWER:**    Defendant state that photographs attached as exhibit 4 of the Complaint

speak for themselves. Defendants deny the remaining allegations in paragraph 71 of the Complaint.

72.     It is the white and black females and the white male who shop while wearing bags and who receive service that are the comparators.

**ANSWER:**     Defendants deny the allegations in paragraph 72 of the Complaint.

73.     The surveillance video, acts and omissions of CSR Wilson and CSR Nolan, and the police reports expose Speedway and its Defendants are not acting in response to a legitimate, non-discriminatory business concern and is not acting in good faith.

**ANSWER:**     Defendants deny the allegations in paragraph 73 of the Complaint.

74.     More evidence of Defendants' discriminatory conduct towards Mr. Jackson is illustrated by Speedway's statement made during the administrative proceeding: "Mr. Jackson's claim of race discrimination is undermined by the fact that CSR Wilson is also black. It is nonsensical to suggest CSR Wilson would discriminate against Mr. Jackson on the basis of his race when she is in the same protected class."

**ANSWER:**     Defendants deny the allegations in paragraph 74 of the Complaint.

75.     Speedway's statement illustrates Defendants' retail consumer racial and color profiling and failure to properly train and supervise its employees in a lawful manner.

**ANSWER:**     Defendants deny the allegations in paragraph 75 of the Complaint.

76.     Speedway's statement illustrates Defendant's basic failure to acknowledge the Equal Employment Opportunity Commission's policy on Race/Color Discrimination, prominently appearing on the Commission's website:

a.     "Discrimination can occur when the victim and the person who inflicted the discrimination are the same race or color." (https://www.eeoc.gov/laws/types/race_color.cfm)

b.     What is "Color"?
Color discrimination occurs when a person is discriminated against based on his/her skin pigmentation (lightness or darkness of the skin), complexion, shade, or tone. Color discrimination can occur between persons of different races or ethnicities, or even between persons of the same race or ethnicity. For example, an African American employer violates Title VII if he refuses to hire other African Americans whose skin is either darker or lighter than his own. (https://www.eeoc.gov/policy/docs/qanda_race_color.html)

**ANSWER:**    Defendants deny the allegations in paragraph 76, including its subparts (a)-(b), of the Complaint.

77.    Black-on-Black racism and Implicit Bias against black males, including pretexting black males as criminals, exists in this Country. A body of authoritative research has been developed by qualified experts. See Black-on-Black Racism; The Hazards of Implicit Bias by Theodore R. Johnson, an Eric and Wendy Schmidt Fellow at New America and an adjunct professor at Georgetown University's McCourt School of Public Policy.

**ANSWER:**    The allegations in paragraph 77 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 77 of the Complaint and, therefore, they deny the same.

78.    On Speedway's video surveillance a person appearing to be an adult African American female brings a stroller into the store. (See Exhibit 1: Camera 6 Sales Floor, Camera 5 Fronter Counter @ 7:31:42 – 7:31:55). The stroller could be used to conceal store items or weapons just as easily as a bag. The video is unclear and discovery will have to address whether a diaper or other bag was stowed in the bottom of the stroller. This female customer was, unlike Mr. Jackson, served by Speedway and Defendants.

**ANSWER:**    Defendants state that the surveillance video segments titled "Camera 6 Sales Floor, Camera 5 Fronter Counter @ 7:31:42 – 7:31:55" attached to Plaintiff's Complaint in Exhibit 1 speak for themselves.  Defendants admit an adult African American female utilized a stroller in Store 3634 but deny that these video segments demonstrate that Plaintiff was illegally denied service. Defendants lack knowledge or information sufficient to form a belief at to the truth of the remaining allegations in paragraph 78 of the Complaint and, therefore, deny the remaining allegations.  Except as expressly admitted, Defendants deny the allegations in paragraph 78 of the Complaint.

79.     Federal and state law exist to recognize and eradicate discrimination based on race, color and sex to protect black males and males of color from being stereotyped as a criminal in the retail consumer setting.

**ANSWER:**     The allegations in paragraph 79 of the Complaint contain legal conclusions

to which no response is required.  To the extent a response is required, Defendants lack knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in paragraph

77 of the Complaint and, therefore, they deny the same.

80.     Mr. Jackson knew from the actions and statements of Defendants that he was being discriminated against based upon his race, color and sex, as he knew women received service under the exact same circumstances. Mr. Jackson perceived and knew from the unexplained rude treatment he received from CSR Wilson and CSR Nolan he was being targeted and denied service based upon his race, color and sex when he had done nothing wrong.

**ANSWER:**     The allegations in paragraph 80 of the Complaint contain legal conclusions

to which no response is required.  To the extent a response is required, Defendants deny the

remaining allegations in paragraph 80 of the Complaint.

81.     Mr. Jackson was not belligerent. Mr. Jackson did not disrupt or interfere any other Speedway customer's right to receive service from Speedway. Mr. Jackson did not pose any risk to lawfully allow Defendants to deny him service.

**ANSWER:**     Defendants deny the allegations in paragraph 81 of the Complaint.

82.     At all times relevant Mr. Jackson displayed appropriate conduct such that Speedway was legally obligated to serve him. Defendants' claim that Mr. Jackson was belligerent by lawfully advocating for his rights, asking meaningful questions about the motivation underlying his discriminatory treatment, because he sought to understand why he was being treated differently from other bag carrying women, is false. Mr. Jackson sought to understand why his civil rights and rights to accommodation were being violated. He sought to affect change through peaceful discussion in hopes that CSR Wilson and CSR Nolan, who were rude and dismissive towards him because of his race, color and sex, would correct their illegal conduct and serve him like they served all other non-black male customers wearing bags. Because Defendants refused service to Mr. Jackson, even when he put his bag approximately sixteen feet away from him, this lawsuit is necessary to force civil rights compliance from Defendants because Mr. Jackson is entitled to shop at Speedway free from all discrimination like women and white men.

**ANSWER:**    Defendants deny the allegations in paragraph 82 of the Complaint.

83.    As a direct and proximate result of Speedway's discriminatory conduct that illegally targeted Mr. Jackson based on his race, color and sex as a black man and as a man when wearing a bag, Mr. Jackson was harmed when he was:

a.    Discriminatorily denied service, even when he placed his bag approximately sixteen feet away from him;

b.    Subjected to emotional harm, including embarrassment and humiliation before other Speedway customers who were served while he was denied service, temporary and permanent psychological harm, distress, depression, anxiety, humiliation, embarrassment, and paranoia, all of which has continued and will continue into the future as he is without adequate resources to seek necessary treatment; and

c.    Subjected to being reported to law enforcement as belligerent and trespassing which was false.

**ANSWER:**    Defendants deny the allegations in paragraph 83, including its subparts (a)-

(c), of the Complaint.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT AND INJUNCTION
### (28 U.S.C. § 2201, et seq.)

84.    Mr. Jackson incorporates paragraphs 1-83 as if fully incorporated and rewritten herein.

**ANSWER:**    Defendants reassert and incorporate their answers to paragraphs 1 through

83 as their answer to paragraph 84 of the Complaint.

85.    An actual controversy has arisen and now exists between Mr. Jackson, a black male, and Defendants concerning Mr. Jackson's rights under the Federal and Ohio state law. A judicial declaration is necessary and appropriate at this time.

**ANSWER:**    The allegations in paragraph 85 of the Complaint contain legal conclusions

to which no response is required.  To the extent a response is required, Defendants deny the

remaining allegations in paragraph 85 of the Complaint.

86.     A place of public accommodation is liable under 42 U.S.C. §2000a when it refuses to provide on the basis of a person's race or color, full and equal enjoyment of the public accommodation's goods, services, facilities, privileges, advantages, and accommodations.

**ANSWER:**     The allegations in paragraph 86 of the Complaint contain legal conclusions to which no response is required.

87.     All persons within the jurisdiction of the United States, regardless of race or color, have the same right to make and enforce contracts under 42 U.S.C. § 1981.

**ANSWER:**     The allegations in paragraph 87 of the Complaint contain legal conclusions to which no response is required.

88.     All citizens of the United States, regardless of race or color, have the same right to purchase personal property under 42 U.S.C. § 1982.

**ANSWER:**     The allegations in paragraph 88 of the Complaint contain legal conclusions to which no response is required.

89.     Any proprietor or any employee, keeper, or manager of a place of public accommodation is liable under Ohio Revised Code § 4112.02(G) for denying to any person on the basis of race, color and sex, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

**ANSWER:**     The allegations in paragraph 89 of the Complaint contain legal conclusions to which no response is required.

90.     Mr. Jackson desires a judicial determination of his rights against Defendants as they pertain to Mr. Jackson's right to be free from discrimination on the basis of race as a black male, on the basis of his color, and on the basis of sex as a male.

**ANSWER:**     The allegations in paragraph 90 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 90 of the Complaint.

91.      In order to prevent violation of Mr. Jackson's rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring Defendants' refusal to serve Mr. Jackson a violation of his rights under Federal and Ohio state law to be free from race, color and sex discrimination.

**ANSWER:**      The allegations in paragraph 91 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 91 of the Complaint.

92.      Pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that this Court issue a permanent injunction prohibiting Defendants from enforcing their ban on **ALL BAGS** policy, in order to prevent the ongoing violation of Mr. Jackson's rights.

**ANSWER:**      The allegations in paragraph 92 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 92 of the Complaint.

93.      Mr. Jackson wants to be able to shop at Speedway without facing future discrimination and does not want other black men and men who wear bags to face the same discrimination he endured.

**ANSWER:**      The allegations in paragraph 93 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 93 of the Complaint.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 2000a**

94.      Mr. Jackson incorporates paragraphs 1-93 as if fully incorporated and rewritten herein.

**ANSWER:**      Defendants reassert and incorporate their answers to paragraphs 84 through 93 as their answer to paragraph 94 of the Complaint.

95.     Defendant Speedway is a place of public accommodation, specifically a gas station and convenience store, which conducts business in the general stream of interstate commerce.

**ANSWER:**     The allegations in paragraph 95 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 95 as the phrase "conducts business in the general stream of interstate commerce" is both vague and undefined.

96.     Defendants denied Plaintiff full and equal enjoyment of Defendant Speedway's goods, services, facilities, privileges, advantages, and accommodations based upon Mr. Jackson's race and color in violation of 42 U.S.C. § 2000a.

**ANSWER:**     The allegations in paragraph 96 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 96 of the Complaint.

97.     Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

**ANSWER:**     The allegations in paragraph 97 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 97 of the Complaint.

98.     Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's race and color as a brown skinned black male.

**ANSWER:**     The allegations in paragraph 98 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 98 of the Complaint.

99.     By Defendants refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful

discrimination based upon Mr. Jackson's race and color as a brown skinned black male.

     **ANSWER:**     The allegations in paragraph 99 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 99 of the Complaint.

## THIRD CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1981

     100.    Mr. Jackson incorporates paragraphs 1-99 as if fully incorporated and rewritten herein.

     **ANSWER:**     Defendants reassert and incorporate their answers to paragraphs 95 through 99 as their answer to paragraph 100 of the Complaint.

     101.    Defendants denied Mr. Jackson an equal right to make and enforce contracts for services based on Mr. Jackson's race and color in violation of 42 U.S.C. § 1981.

     **ANSWER:**     The allegations in paragraph 101 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 101 of the Complaint.

     102.    Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

     **ANSWER:**     The allegations in paragraph 102 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 102 of the Complaint.

     103.    Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's race and color as a brown skinned black male.

**ANSWER:**    The allegations in paragraph 103 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 103 of the Complaint.

104.    By Defendants' refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally and with reckless indifference deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's race and color as a brown skinned black male.

**ANSWER:**    The allegations in paragraph 104 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 104 of the Complaint.

### FOURTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1982

105.    Mr. Jackson incorporates paragraphs 1-104 as if fully incorporated and rewritten herein.

**ANSWER:**    Defendants reassert and incorporate their answers to paragraphs 101 through 104 as their answer to paragraph 105 of the Complaint.

106.    Defendants' refusal to serve Mr. Jackson based on Mr. Jackson's race and color denied Mr. Jackson of his right to purchase personal property free from discrimination in violation of 42 U.S.C. § 1982.

**ANSWER:**    The allegations in paragraph 106 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 106 of the Complaint.

107.    Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

35

**ANSWER:**     The allegations in paragraph 107 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 107 of the Complaint.

108.     Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's race and color as a black male.

**ANSWER:**     The allegations in paragraph 108 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 108 of the Complaint.

109.     By Defendants refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally and with reckless indifference deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's race and color as a black male.

**ANSWER:**     The allegations in paragraph 109 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 109 of the Complaint.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF OHIO REVISED CODE § 4112.02**

110.     Mr. Jackson incorporates paragraphs 1-109 as if fully incorporated and rewritten herein.

**ANSWER:**     Defendants reassert and incorporate their answers to paragraphs 106 through 109 as their answer to paragraph 110 of the Complaint.

111.     Defendants engaged in unlawful discriminatory practice when they deprived Mr. Jackson full and equal enjoyment of Defendant Speedway's goods, services, facilities, privileges, advantages, and accommodations based upon Mr. Jackson's race in violation of Ohio Revised Code § 4112.02(G).

**ANSWER:**     The allegations in paragraph 111 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 111 of the Complaint.

112.     Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

**ANSWER:**     The allegations in paragraph 112 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 112 of the Complaint.

113.     Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's race as a black male.

**ANSWER:**     The allegations in paragraph 113 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 113 of the Complaint.

114.     By Defendants refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's race as a black male.

**ANSWER:**     The allegations in paragraph 114 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 114 of the Complaint.

115.     On October 9, 2018, Mr. Jackson, by and through the undersigned, sent Defendant Speedway a letter notifying Defendant Speedway of the possibility of filing a civil action alleging violation of an accessibility law.

**ANSWER:**     Defendant Speedway admits the allegations of paragraph 115 of the Complaint.  The Individual Defendants lack knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 115 of the Complaint and, therefore, they deny the same.

116.    On November 21, 2018, Defendant Speedway responded to the undersigned, indicating no actions would be taken on behalf of Defendants.

**ANSWER:**    Defendant Speedway admits that it responded on or about November 21, 2018, but denies the remaining allegations in paragraph 116 of the Complaint.  The Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116 of the Complaint and, therefore, they deny the same.

117.    Given the recent effective date of Ohio Revised Code § 4112.16 on March 20, 2019, and given the approaching statute of limitations to file this action on April 15, 2019, this particular Plaintiff did not have sufficient time to engage in an additional notice to Defendants after the effective date of March 20, 2019 in the specific manner described under R.C. § 4112.16. Plaintiff states the spirit and intent of the new notice requirement effective March 20, 2019 was achieved with the October 9, 2018 and November 21, 2018 exchange between the parties.

**ANSWER:**    Defendants deny the allegations in paragraph 117 of the Complaint.

118.    Plaintiff Mr. Jackson requests an award of reasonable attorneys' fees and costs as well as all other available damages be awarded in this matter.

**ANSWER:**    The allegations in paragraph 118 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 118 of the Complaint.

## SIXTH CAUSE OF ACTION
## VIOLATION OF OHIO REVISED CODE § 4112.02

119.    Mr. Jackson incorporates paragraphs 1-118 as if fully incorporated and rewritten herein.

**ANSWER:**    Defendants reassert and incorporate their answers to paragraphs 111 through 118 as their answer to paragraph 119 of the Complaint.

120. Defendants engaged in unlawful discriminatory practice when they deprived Mr. Jackson full and equal enjoyment of Defendant Speedway's goods, services, facilities, privileges, advantages, and accommodations based upon Mr. Jackson's color in violation of Ohio Revised Code § 4112.02(G).

**ANSWER:** The allegations in paragraph 120 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 120 of the Complaint.

121. Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

**ANSWER:** The allegations in paragraph 121 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 121 of the Complaint.

122. Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's color as a brown skinned black male.

**ANSWER:** The allegations in paragraph 122 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 122 of the Complaint.

123. By Defendants refusal to serve Plaintiff, a brown skinned male, in a place of public accommodation because he was wearing a bag, Defendants intentionally deprived Mr. Jackson the same rights as are enjoyed by white and black female citizens who wear bags, constituting unlawful discrimination based upon Mr. Jackson's color as a brown skinned black male.

**ANSWER:** The allegations in paragraph 123 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 123 of the Complaint.

124.    On October 9, 2018, Mr. Jackson, by and through the undersigned, sent Defendant Speedway a letter notifying Defendant Speedway of the possibility of filing a civil action alleging violation of an accessibility law.

**ANSWER:**    Defendant Speedway admits the allegations of paragraph 124 of the Complaint.  The Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124 of the Complaint and, therefore, they deny the same.

125.    On November 21, 2018, Defendant Speedway responded to the undersigned, indicating no actions would be taken on behalf of Defendant.

**ANSWER:**    Defendant Speedway admits that it responded on or about November 21, 2018, but denies the remaining allegations in paragraph 125 of the Complaint.  The Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125 of the Complaint and, therefore, they deny the same.

126.    Given the recent effective date of Ohio Revised Code § 4112.16 on March 20, 2019, and given the approaching statute of limitations to file this action on April 15, 2019, this particular Plaintiff did not have sufficient time to engage in an additional notice to Defendants after the effective date of March 20, 2019 in the specific manner described under R.C. § 4112.16. Plaintiff states the spirit and intent of the new notice requirement effective March 20, 2019 was achieved with the October 9, 2018 and November 21, 2018 exchange between the parties.

**ANSWER:**    Defendants deny the allegations in paragraph 126 of the Complaint.

127.    Plaintiff Mr. Jackson requests an award of reasonable attorneys' fees and costs as well as all other available damages be awarded in this matter.

**ANSWER:**    The allegations in paragraph 127 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 127 of the Complaint.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF OHIO REVISED CODE § 4112.02

128.    Mr. Jackson incorporates paragraphs 1-127 as if fully incorporated and rewritten herein.

**ANSWER:**    Defendants reassert and incorporate their answers to paragraphs 120 through 127 as their answer to paragraph 128 of the Complaint.

129.    Defendants engaged in unlawful discriminatory practice when it deprived Mr. Jackson full and equal enjoyment of Defendant Speedway's goods, services, facilities, privileges, advantages, and accommodations based upon Mr. Jackson's sex in violation of Ohio Revised Code § 4112.02(G).

**ANSWER:**    The allegations in paragraph 129 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 129 of the Complaint.

130.    Defendants have no legitimate business justification or reason to support their refusal to serve Plaintiff.

**ANSWER:**    The allegations in paragraph 130 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 130 of the Complaint.

131.    Any reason proffered by Defendants is a mere pretext for unlawful discrimination based upon Mr. Jackson's sex as a male.

**ANSWER:**    The allegations in paragraph 131 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 131 of the Complaint.

132.    By Defendants refusal to serve Plaintiff, a black male, in a place of public accommodation because he was wearing a bag, Defendants intentionally deprived Mr. Jackson the same rights as are enjoyed by female citizens who wear bags, constituting unlawful discrimination

based upon Mr. Jackson's sex as a male.

**ANSWER:**     The allegations in paragraph 132 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 132 of the Complaint.

133.    On October 9, 2018, Mr. Jackson, by and through the undersigned, sent Defendant Speedway a letter notifying Defendant Speedway of the possibility of filing a civil action alleging violation of an accessibility law.

**ANSWER:**     Defendant Speedway admits the allegations of paragraph 133 of the Complaint.  The Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 133 of the Complaint and, therefore, they deny the same.

134.    On November 21, 2018, Defendant Speedway responded to the undersigned, indicating no actions would be taken on behalf of Defendant.

**ANSWER:**     Defendant Speedway admits that it responded on or about November 21, 2018, but denies the remaining allegations in paragraph 134 of the Complaint.  The Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 134 of the Complaint and, therefore, they deny the same.

135.    Given the recent effective date of Ohio Revised Code § 4112.16 on March 20, 2019, and given the approaching statute of limitations to file this action on April 15, 2019, this particular Plaintiff did not have sufficient time to engage in an additional notice to Defendants after the effective date of March 20, 2019 in the specific manner described under R.C. § 4112.16. Plaintiff states the spirit and intent of the new notice requirement effective March 20, 2019 was achieved with the October 9, 2018 and November 21, 2018 exchange between the parties.

**ANSWER:**     Defendants deny the allegations in paragraph 135 of the Complaint.

136.    Plaintiff Mr. Jackson requests an award of reasonable attorneys' fees and costs as well as all other available damages be awarded in this matter.

**ANSWER:**    The allegations in paragraph 136 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 136 of the Complaint.

## EIGHTH CAUSE OF ACTION
## COMMON LAW NEGLIGENT SUPERVISION

137.    Mr. Jackson incorporates paragraphs 1-136 as if fully incorporated and rewritten herein.

**ANSWER:**    Defendants reassert and incorporate their answers to paragraphs 129 through 136 as their answer to paragraph 137 of the Complaint.

138.    Defendants' actions constitute negligent supervision under the common law of the State of Ohio and proximately harmed Mr. Jackson.

**ANSWER:**    The allegations in paragraph 138 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 138 of the Complaint.

## NINTH CAUSE OF ACTION
## COMMON LAW NEGLIGENT TRAINING

139.    Mr. Jackson incorporates paragraphs 1-138 as if fully incorporated and rewritten herein.

**ANSWER:**    Defendants reassert and incorporate their answer to paragraph 138 as their answer to paragraph 139 of the Complaint.

140.    Defendants' actions constitute negligent training under the common law of the State of Ohio and proximately harmed Mr. Jackson.

**ANSWER:**    The allegations in paragraph 140 of the Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 140 of the Complaint.

141.    Defendants deny each and every allegation, claim, premise, and theory not expressly admitted herein as true.

142.    Defendants deny that Plaintiff is entitled to any relief requested in his prayer for relief.

## AFFIRMATIVE AND OTHER DEFENSES

1.    Plaintiff fails to state one or more claims for which relief can be granted.

2.    Plaintiff's claims are barred, in whole or in part, by the applicable limitations period.

3.    Plaintiff's claims are barred by the doctrines of estoppel, laches and/or waiver.

4.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

5.    Defendants did not take actions in knowing or reckless disregard of Plaintiff's protected rights and Defendants did not willfully violate any laws with respect to its treatment of Plaintiff; therefore, Plaintiff is not entitled to punitive damages or liquidated damages.

6.    Any injuries or damages that Plaintiff allegedly sustained occurred because of his own acts or omissions, not because of any conduct by Defendants.

7.    Plaintiff's claims for damages are barred to the extent that he has failed to make reasonable efforts to mitigate his damages, if any.

8.      Plaintiff's state law claims for damages are subject to the provisions of the Ohio Tort Reform Act, O.R.C. §2315.18 et seq., including but not limited to the provision regarding bifurcation of his punitive damages claim and evidence regarding alleged punitive damages.

9.      Defendants allege that, if Plaintiff was denied any equal access, it was because of his improper or disruptive behavior and not for any purpose prohibited by law.  Plaintiff is not entitled to attorney's fees, in whole or in part, due to his failure to comply with the notice requirements enumerated in O.R.C. §4112.16.

10.     Even if there was evidence of discriminatory motivation, which Defendants deny, Plaintiff would have been treated the same absent such motivation.

11.     Plaintiff is not entitled to the equitable relief he seeks in the Complaint because an adequate remedy exists at law.

12.     Plaintiff's claims under 42 U.S.C. § 2000a are barred because there is no real or immediate threat that any individual will be wronged and no likelihood of substantial and immediate irreparable injury, and Plaintiff is not otherwise able to meet his burden for injunctive relief.

13.     The acts and/or omissions of Plaintiff or other third parties constitutes responsible, intervening and/or superseding causes of Plaintiff's alleged damages.

14.     Defendants offered and provided Plaintiff the same rights and enjoyment of all benefits, privileges, terms and conditions of a contractual relationship as Defendants offered and provided to all other customers present at Store 3634 at the same time as Plaintiff and as Defendants offer and provide to customers of Defendant Speedway's stores at all times.

15.     Plaintiff's alleged damages are speculative and remote.

16.     There is no factual or legal basis for an award of compensatory, monetary, punitive, liquidated, emotional attorney's fees or costs, or any other damages against Defendants.

17.     Plaintiff's claim for punitive damages must be denied because Defendants did not willfully violate any law with respect to the treatment of Plaintiff, and any actions taken by Defendants regarding Plaintiff were taken in good faith, in accordance with Defendant Speedway's internal policies against discrimination, harassment and retaliation, and not taken wantonly, with malice, in bad faith and/or with reckless indifference to Plaintiff's protected rights.

18.     Any action taken by Defendants was taken for legitimate and non-retaliatory business reasons, and not on account of Plaintiff's race or color.

19.     Because the Complaint is couched in numerous conclusory terms, Defendants cannot fully anticipate all affirmative defenses that may be applicable to this action. Accordingly, Defendants reserve the right to assert additional affirmative defenses applicable to Plaintiff's claims.

20.     Plaintiff's request for a jury trial should be denied with regard to Plaintiff's claims for equitable relief.

### PRAYER FOR RELIEF BASED ON DEFENDANTS' ANSWERS AND DEFENSES

WHEREFORE, Defendants request that judgment be granted in its favor and against Plaintiff in the following manner:

1.     That the Complaint be dismissed in its entirety;

2.     That Plaintiff be ordered to pay Defendants' reasonable attorneys' fees and costs incurred in defending this action;

3.     That Defendants be awarded such other relief as the Court may deem appropriate.

Respectfully submitted,


/s/ Ryan J. Morley
Ryan J. Morley (0077452)
Shannon Marie Byrne (0088182)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH  44114
Telephone: 216.696.7600
Facsimile: 216.696.2038
rmorley@littler.com
sbyrne@littler.com

Attorneys for Defendants
SPEEDWAY LLC, SHATONYA WILSON,
AND MICHELLE NOLAN


## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2019, the foregoing *Defendants' Speedway LLC, Shatonya Wilson, and Michelle Nolan's Answer and Affirmative Defenses to Plaintiff's Complaint for Damages and Declaratory Judgment, and Permanent Relief* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


/s/ Ryan J. Morley
Ryan J. Morley

One of the Attorneys for Defendants


FIRMWIDE:163893105.2 028651.1195